## Menser v. Commonwealth.

(Decided January 18, 1924.)

### Appeal from Christian Circuit Court.

Homicide—Instruction on Self-Defense Held Erroneous and Prejudicial.—An instruction embodying the law of self-defense, with the qualification appended to it, "unless you believe from the evidence to the exclusion of a reasonable doubt that the said C. (the defendant) was the aggressor and brought on the difficulty, in which event he could not avail himself of the right of self-defense or apparent necessity," was erroneous and prejudicial, in that it left the jury to mere conjecture or speculation in their deliberations.

JOHN C. DUFFY for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Reversing.

On the night of May 19, 1923, a tragic shooting occurred near the little town of Mannington, Hopkins county, in which two brothers, Charlie Menser and Will Menser, were involved, resulting in the killing of the latter and the serious wounding of the former.

It seems that Will Menser intended moving to a farm down in the country, and had requested his brother, John, and half brother, Leslie Knight, to assist him; and with this object in view late on the evening of May 19, they left their home and on the way stopped in Mannington.

They were accompanied by appellant, Charlie Menser, who had been spending a few days with his brother, John; and upon reaching Mannington certain witnesses testified that John Menser supplied them with several drinks, although this is contradicted by others. However, while there Charlie Menser called at the home of Will Harbison and secured a 25 automatic pistol that Harbison had promised to give him for assistance rendered in the disposal of an automobile. The night being exceedingly dark, appellant volunteered to walk in advance of the teams driven by John Menser and Leslie Knight, and guide them to the home of his brother, Will. Upon reaching their destination about half past ten, they were met by Will, who had retired, but hearing them coming arose and with his wife hastily dressed. The lantern carried by Charlie Menser being of the kind used by miners made it necessary to secure some water to mix with the chemicals, and he was directed to go into the house for it. There he met Zela Menser, his sister-in-law, and among other things ridiculed the idea of their locating on a poor, rocky farm down in the country, saying: "You are making a hell of a move, and are going to starve to death." He then returned to the yard where his brother had preceded him and was engaged in conversation with the others. The testimony here varies as to just what ensued, but appellant states that he first asked his brother, "Where is your stable?" and commented unfavorably on his lack of a place in which to put the stock for the night; and he claims his brother's response was, "It is none of your d—— business," and there the argument was momentarily dropped. Appellant further claims that when he returned to the yard Will Menser was saying some uncomplimentary things concerning him and called him a vile name, and he said to him, "Do you know who you are talking to? Damn you, I will show you who you are talking to." The testimony further shows that other harsh and obscene expressions were indulged in between the brothers, when suddenly the shooting began. Zela Menser, wife of deceased, testified that she had gone to the front door, and upon reaching there saw appellant draw his 25 automatic and shoot at her husband three times while his hands were at his side, whereupon he, drawing his 45, began firing. However, upon cross-examination, she admits not having reached the door

until the second shot, but repeated that her husband remained with his hands at his side until appellant had fired the third time. The brother, John Menser, testified that both brothers apparently reached for their pistols at the same time, but corroborates the testimony of Zela Menser in so far as she claims that appellant fired the first three shots. The witness further said that he could not see the position of deceased's arms owing to the fact that he was standing on the opposite side of a wagon from where the shooting occurred. Leslie Knight, the half brother, also corroborated the testimony of the other two, and said after appellant had fired three shots, Will Menser began shooting, resulting in the wounding of appellant three times. Will Menser received but one wound, in the abdomen, which resulted in his death forty-eight hours later. He and his brother were taken to the hospital in Hopkinsville, where the latter recovered; and upon his trial some time later was convicted and sentenced to the penitentiary for twenty-one years, from which he appeals.

In his testimony appellant says that the deceased drew his pistol first, and upon seeing this he reached for his and the shooting was simultaneous, in which theory he is sustained to some extent by testimony of witnesses at Mannington, who claim to have been at various distances from the scene of the shooting, ranging from 300 to 600 yards. The night was calm and it was said they could distinctly hear the reports, one coming from a small weapon and the other from a much larger one; and while they could not determine exactly which was first, nevertheless they alternated, and the firing was very rapid.

In his motion for a new trial counsel for appellant filed three grounds upon which he relied for a reversal:

First, because of errors of the court in admitting incompetent evidence in behalf of the Commonwealth, and in excluding evidence offered by defendant, both of which were highly prejudicial to defendant and were objected to and excepted to at the time.

Second, because of errors of the court in giving to the jury instruction No. 4 as written, which deprived him of the law of self-defense, and which was objected to and excepted to at the time.

Third, because the verdict of the jury was excessive and was manifestly the result of passion and prejudice.

However, after carefully reviewing this case we can find nothing to support the contentions of appellant as

far as they relate to grounds Nos. 1 and 3; but are of the opinion that the second ground, relating to instruction No. 4, possesses merit, and the latter part of this instruction, which is herewith given, should not have been permitted to go to the jury.

"4.   The court instructs the jury that, although you may believe from the evidence to the exclusion of a reasonable doubt, that the defendant, Charlie Menser, shot and killed the said Will Menser, at the time and place and in the manner set out and alleged in the indictment, yet, if you should believe from the evidence that at the time he did so, he had reasonable cause to believe, and did, in good faith believe that he was in danger of losing his life, or of suffering great bodily harm at the hands of the said Will Menser, then, in that event, he had a right to use such force as appeared to him in the exercise of a reasonable judgment to be necessary, or apparently necessary, to save his life, or protect his person from impending harm, and if you should believe from the evidence that the defendant used no more force than was necessary, or apparently necessary for said purpose, you should acquit him on the grounds of self-defense or apparent necessity; unless you believe from the evidence to the exclusion of a reasonable doubt, that the said Charlie Menser was the aggressor, and brought on the difficulty, in which event he could not avail himself of the right of self-defense, or apparent necessity."

This instruction which embodied the law of self-defense, as will be seen, had this qualification appended to it, "unless you believe from the evidence to the exclusion of a reasonable doubt that the said Charlie Menser was the aggressor and brought on the difficulty, in which event he could not avail himself of the right of self-defense or apparent necessity."

Attorney for appellant seriously contends that this qualification with which the instruction on self-defense ends was highly prejudicial to appellant, inasmuch as the court failed to cite in just what manner or by what means the jury were to arrive at the conclusion that appellant was the aggressor, or by what acts or conduct he brought on the difficulty, as the jury would then be left to mere conjecture or speculation in their deliberations. And we are of the opinion that this contention is well grounded and entirely correct.

In Greer v. Commonwealth, 27 R. 333, referring to an instruction on self-defense which had this qualification, "unless you believe from the evidence that the defendant brought on the difficulty, then the law of self-defense does not apply unless the defendant in good faith abandoned the difficulty," the court said:

"Under this qualification the jury might have thought that if the defendant brought on the difficulty by estranging the husband and wife, or by insulting Mrs. Calloway that day, or by following Mrs. Calloway as she had done, then the right of self-defense did not exist. This qualification of the self-defense instruction has been often condemned by this court."

In Wrist v. Commonwealth, 33 R. 718, the court said:

"The safer and better practice is not to use the words 'brought on the difficulty' in an instruction, but if they are used, the court should define their meaning, and there are many cases in which it would be prejudicial error to fail to define what was meant by the expression 'bringing on, or brought on, the difficulty.' "

In Mays v. Commonwealth, 200 Ky. 681, the court said, in referring to self-defense instruction:

"The self-defense instruction was drawn with commendable accuracy, but the court attached to it this qualification: 'Unless you shall further believe from the evidence, to the exclusion of a reasonable doubt, that the defendant at the time when he was not in danger of death or great bodily harm at the hands of the deceased, and did not believe and have reasonable grounds to believe that he was in such danger, unlawfully, wilfully and feloniously provoked and brought on the difficulty with the deceased by assaulting him with a deadly weapon or making threats or demonstrations to do so, and thus made the harm or danger to himself, if any there was, excusable on the part of the deceased in his (deceased's) necessary or apparently necessary self-defense, then you can not acquit the defendant on the grounds of self-defense.' The first criticism of the qualification is directed to the language therein contained, 'Provoked and brought on the difficulty with the deceased,' and a number of cases from this court are cited, and many more could have been, to the effect that to say in an instruction qualifying the right of self-defense that it would be lost to defendant if he brought on the difficulty without defining or pointing out the facts which would constitute such an act was erroneous, since

the jury would then be left to speculate as to what acts were sufficient to bring on the difficulty.''

Under the evidence we feel that this qualification of the instruction on the right of self-defense was improper, as the jury might be led to believe that, if appellant went to deceased's house or used the language relative to their making a ''damn poor move,'' or any other, not with the intention of being offensive or with the intent of bringing on the difficulty, but which might, however, have angered the deceased or have caused him to draw his pistol, it would be authorized to deny to him the right of self-defense.

There would have been no killing on the night in question if appellant had not carried a pistol—a cowardly, vicious and unnecessary habit—though it is manifestly shown that its possession was not for the purpose of bringing on the affray or of using it for a deadly purpose; or if deceased had not placed his own 45 automatic in his pocket before going to the door, which emphasizes the fact that but for the carrying of concealed and deadly weapons homicides would rarely occur.

It is further shown that the words of appellant and the obscene expressions used by him relative to his brother's contemplated move, resulting, possibly, from a friendly interest in his welfare rather than an intention to be offensive, met a ready response in terms of a similar nature from the deceased.

Under instructions of the court the jury was apparently authorized to believe that any of the acts above referred to would deprive appellant of the right to self-defense instructions.

In the case of Allen v. Commonwealth, 86 Ky. 643, the court said, in referring to an instruction on self-defense:

''2. Instructions must be based upon the evidence, and it is error to instruct the jury as to their duty in the event they find a certain state of facts, the existence of which the evidence does not tend to show. It was, therefore, error in this case to instruct the jury that the defendant had no right to act in self-defense if he brought on the difficulty, unless he had, in good faith, abandoned it, there being no testimony tending to show that he did or said anything with the intention of provoking a difficulty, or which made the conduct of the deceased excusable. The mere fact that the accused went to where the

deceased was, explained as it was by the circumstances, and what he then and there said, did not authorize the qualification of the instruction.

"3. Self-defense.—One cannot be deprived of the benefit of the plea of self-defense because words innocently spoken by him or in jest, or some act not calculated or intended to do so, may have contributed to bring on the difficulty. It is, therefore, error to instruct a jury that if the defendant 'brought on' the difficulty, he cannot rely upon the plea of self-defense, because the language is too general.

"4. Same—Instruction.—It is error to instruct a jury that the defendant cannot rely upon the plea of self-defense if they 'believe, from the evidence,' that certain facts existed. They should be required to believe, 'to the exclusion of a reasonable doubt,' that such facts existed."

In Riley v. Commonwealth, 94 Ky. 266, relative to an instruction as to self-defense, the court said:

"1. Instruction as to self-defense.—Upon a trial for murder, there being no testimony tending to show that the accused sought or provoked the difficulty, it was error to give any instruction upon that hypothesis. But even if the evidence authorized an instruction of that character, it was misleading to tell the jury they could not acquit upon the ground of self-defense, if they believed 'from all the evidence,' that immediately before the shooting 'the defendant, by his own wrongful acts then and there done by him,' gave the deceased reasonable grounds to believe that his life was in danger, as the instruction intimates that defendant's acts were wrongful; and, besides, requires the jury to believe only from a preponderance of the evidence, and not to the exclusion of a reasonable doubt, the facts that are said to be sufficient to deprive defendant of the right of self-defense."

In Cockrill v. Commonwealth, 95 Ky. 22, we find the opinions above quoted fully sustained.

In Wilcoxen v. Commonwealth, 15 R. 261, relative to instructions, the court said:

"The instruction denying appellant the right to rely upon the plea of self-defense in case he 'brought on' the difficulty is erroneous in the use of the term 'brought on' the difficulty, which is of too general a character for use in an instruction where life or liberty is involved."

In Combs v. Commonwealth, 15 R. 659, 25 S. W. 592, it is held:

"An instruction that if the accused 'brought on the difficulty' with deceased then he could not rely on the plea of self-defense unless he had abandoned the difficulty before the homicide ought not to be given where the circumstances are such that the jury might deny the right of self-defense to a defendant who innocently and unintentionally 'brought on' the difficulty."

We can not but feel that after carefully reading the records in this case, and noting the error referred to in instruction No. 4, appellant is entitled to a retrial of his case.

Judgment reversed and cause remanded for that purpose.