## Hamilton v. Commonwealth.

(Decided February 25, 1927.)

### Appeal from Montgomery Circuit Court.

Homicide—Instruction Prohibiting Acquittal of Murder on Ground of Self-Defense, if Defendant Voluntarily Fought or Began Difficulty, Held Warranted by Evidence.—In murder trial, instruction

not to acquit on ground of self-defense, if defendant and deceased voluntarily engaged in fight with mutual intent to kill or do great bodily harm, or defendant, when in no real or apparent danger of death or great bodily harm, began difficulty, held warranted by evidence.

HENRY WATSON and C. W. GOODPASTER for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Charged by the indictment with the murder of Oscar Tally, the appellant, John Hamilton, was upon trial, found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for seven years. From the judgment entered upon the verdict of the jury, he has prosecuted this appeal. This homicide occurred under these circumstances: Both Hamilton and Tally lived near Sideview in Montgomery county, Kentucky. They were farmers and neighbors. Tally had loaned some money to Hamilton a year or so before the homicide, and they had been swapping work with each other, and were having trouble in arriving at a settlement. Every time Tally would meet Hamilton, he would ask him for his money. This state of affairs had continued until the feeling between the two had become bitter. Hamilton had ceased to speak to Tally and there is some evidence in the record that Tally had made threats that he would kill Hamilton if he didn't pay him what he owed him, and these threats had been communicated to Hamilton. On Sunday, September 6, 1925, Tally, his mother, and his wife and two children had spent the day with his wife's stepmother, and as they returned to their home that afternoon at about four o'clock, they passed the home of Grant Anderson. Hamilton was sitting on the fence in front of Anderson's house. Tally drove past the house 71 feet, stopped the car by the side of Anderson's garden, got out of it and came back to where Hamilton was sitting on the fence. He went up to him and said, "Mr. Hamilton, I'd like to get a check for what you owe me because I want to get done housing tobacco and I need the money to pay my hands." Hamilton replied, "I will not settle with you until I get ready. When you settle my way, I will settle." Tally said, "I can't

settle your way, you won't settle right. You know the money you borrowed from me, and I would like to have it." Hamilton called Tally a G— d— s— of a b—. Tally said, "I didn't stop to have trouble." Hamilton repeated the epithet and again Tally said he didn't want any trouble. Hamilton called Tally a "low down, dirty, s— of a b—." Then Hamilton said, "You are a dirty chicken-stealing s— of a b—; you stole my chickens last winter." Tally replied, "That is all right, I can take it, I see you have a pistol. I can see it." Hamilton said "Yes, I have." He pulled his pistol and continued to curse Tally. Tally threw up his hands and said, "Don't shoot. I haven't a thing, not even a pocket knife. I'll turn my pockets to show you I have no knife or pistol with which to defend myself; but, you old bastard, you are not game enough to throw down your gun and fight like a man." At this point, Anderson said, "Tally, go home. Settle this some other time. Don't have trouble in my yard. Go on out if you are going to have trouble." Tally said, "All right, Mr. Anderson, I'll go," and he started along the pike to his car. Anderson said, "Hamilton, get out my yard and stay out." Instead of leaving Anderson's yard by way of the front gate, where he was at the time, Hamilton followed Tally and walked along inside the yard 43 feet to the fence between the yard and the garden. At that point there was another gate leading from the yard out to the pike, and Hamilton walked out that gate just about the time that Tally reached his car. He had his pistol in his hand, and said, "I'll shoot your d— black heart out, you dirty s— of a b—." He was then in about 28 feet of Tally. Tally looked over his shoulder and saw Hamilton coming with his pistol drawn. Tally got his pistol out of the car. Between Anderson's yard and garden there was a fence covered with honeysuckle vines that grew so thickly and abundantly that one could not see through them. When Hamilton saw Tally get his pistol, he came back into the yard and concealing himself behind these honeysuckle vines; he ran along the vines for about 30 feet and got behind an apple tree. Shortly before reaching the apple tree, Hamilton shot at Tally over the vines and Tally shot back at him. While Hamilton was endeavoring to reach the apple tree. Tally was running along the pike to get behind a maple tree that was standing in Anderson's yard about 5 feet from the pike. Tally ran a foot or so

beyond the maple, whereupon Hamilton stepped from behind the apple tree and shot at Tally the second time. The ball struck Tally in the chest just below the heart, and went through his body. Tally fell, grabbing at Anderson's yard fence as he fell. When Tally fell, Hamilton rushed forward with his pistol and said, "I'll finish you up." Mrs. Tally threw herself over her husband's body and asked Hamilton not to shoot any more. Tally also asked him not to shoot any more and said, "You have killed me already." Thereupon, Hamilton left, going toward Sideview, which was in the opposite direction to the way he and Tally had both started when Anderson told them to get out of his yard. From the wound inflicted Tally died on the 14th of September. Hamilton contends that he had started home after Anderson told him to get out of his yard, and that his home was in the direction he had started.

There is but one alleged error of which Hamilton is complaining, and that is the action of the court in giving to the jury instruction No. 3, which is:

"Although the jury may believe from the evidence beyond a reasonable doubt that the defendant John Hamilton shot and killed the deceased, Oscar Tally, yet if at the time the defendant shot and killed the deceased he had reasonable grounds to believe, and in good faith did believe, that the deceased was then and there about to inflict upon him death or some great bodily harm, and that to shoot the deceased was necessary, or seemed to him in the exercise of a reasonable judgment to be necessary, in order to protect himself from danger, real or to the defendant apparent, you should find him not guilty on the ground of self-defense or apparent necessity, *unless you shall further believe from the evidence beyond a reasonable doubt that the fight was voluntarily engaged in by both the defendant and the deceased with intention on the part of each to kill the other or to do him great bodily harm, or that the defendant when he was in no danger, real or to him apparent, of death or great bodily harm at the hands of the deceased, began the difficulty by assaulting or attempting to assault deceased, and thereby made the danger to himself, if any, excusable on the part of the deceased in his necessary or apparently neces-*

*sary self-defense, then in either of these events the defendant Hamilton should not be acquitted on the ground of self-defense or apparent necessity."*

Hamilton insists that the italicized part of this instruction should not have been given. His objection is not directed to the form of the instruction, but he insists that there should have been no qualification of the self-defense instruction, and he has placed his reliance upon the following cases: Terrell v. Com., 76 Ky. 246; Menser v. Com., 201 Ky. 607, 257 S. W. 1038; Barnard v. Com., 10 Ky. L. R. 143, 8 S. W. 444; Smith v. Com., 206 Ky. 728, 268 S. W. 328; Martin v. Com., 207 Ky. 519, 269 S. W. 556; Howard v. Com., 202 Ky. 711, 261 S. W. 246; Watson v. Com., 15 Ky. L. R. 360, 23 S. W. 666.

The facts in this case make those cases inapplicable. On the contrary, the case of Smith v. Com., 215 Ky. 815, 287 S. W. 8, is directly in point, and from the similarity of the facts in this case to those in the Smith case, we feel that the two cases cannot be distinguished.

If this be regarded as one difficulty, the evidence shows it was begun by Hamilton when, in response to a civil request by Tally, he cursed Tally, and drew his pistol upon him. If we regard it as two difficulties, the first one ending when Anderson ordered these parties to leave, then again it appears Hamilton began the second difficulty when he followed Tally out into the road, with pistol drawn, cursing him and declaring his purpose to shoot his heart out. If we give this evidence a most extreme construction and regard it as constituting three difficulties and the third as beginning when Tally got his pistol, we again find Hamilton began it by firing the first shot. In this third scene, both these parties appeared to have voluntarily engaged in this fight, each ready, willing and anxious to kill the other.

The dying statement of Tally and the evidence of three eye-witnesses to this difficulty, fixed these facts with remarkable certainty, and with an unusual degree of agreement, and after a careful consideration of these facts, we have concluded that there is no merit in Hamilton's contention.

The judgment is affirmed.