## Hall v. Commonwealth.

(Decided January 29, 1915.)

### Appeal from Letcher Circuit Court.

Homicide—Evidence—Self Defense—Instructions.—On a trial for murder where the evidence tends to show that throughout the difficulty others were acting in concert with the deceased, an instruction on self defense should embrace the idea that if the defendant believed and had reasonable grounds to believe that he was then and there in danger of death, or the infliction of great bodily harm either at the hands of the decedent or of such others acting in concert with him, and that it was necessary or believed by him to be necessary in the exercise of a reasonable judgment to shoot the decedent to avert such danger, real or apparent, he was entitled to an acquittal.

S. E. BAKER for appellant.

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant was indicted in the Letcher Circuit Court charged with the murder of Talt Hall, and upon his trial was convicted and sentenced to the penitentiary for life, from which judgment he has appealed.

As there is a fatal error in one of the instructions which will necessitate the reversal of this judgment, and consequently another trial of this case, we will refrain from any extended discussion of the evidence in the case except in so far as it may be necessary to point out the error in the instruction referred to.

On the first of August, 1914, there was held a school district election at a school house in Letcher county on Rockhouse Creek; the two candidates were Lee Hall, a son of Marion Hall, and a nephew of appellant, and Lewis Hall, the father of Talt Hall, the man appellant is charged with killing. There was great local interest shown in this election, and on the day of the election a crowd gathered at this school house, and many of them, including some women, remained there until the election was over and the result announced.

While there was no particular disturbance during the election, it is shown at one time Talt Hall, Dunk Quillen, and someone else went into the house where the election was being held, at which election appellant was an officer, and Talt Hall offered to appellant some sort of a paper and demanded that he read it, which appellant declined to do; but what this paper was or the nature of it does not appear. While, as stated, there was no open disturbance, this circumstance and other occurrences during the day indicated some feeling between the adherents of the two candidates.

After the result was announced the parties began to leave the school house, appellant and his brother Marion with others going down the creek toward their homes, having left the school house ahead of Talt Hall and Dunk Quillen. Shortly thereafter Talt Hall and Quillen mounted a mule with their saddle bags, Hall in front and Quillen behind, and started in the same direction that appellant and his brother had gone; Talt Hall and Quillen had been drinking during the day, and at least one of them, as they went down the road, was yelling or at least using loud and boisterous language. In some way Marion Hall had gotten ahead of appellant, and Talt Hall and Quillen overtook appellant and some conversation occurred between Talt Hall and appellant. The exact nature of that conversation, and who began it, is more or less in doubt under the evidence, but at least two or three witnesses say that while they were so riding along beside appellant, who was walk-

ing, Talt Hall two or three times undertook to reach into the saddle pockets where his pistol was, but was prevented from so doing by Quillen.

It is claimed that Talt Hall and Quillen were on their way to the residence of a relative of Hall's named Bentley; Bentley's gate is right at a point on the road near where appellant and Marion Hall had to cross the creek; when the parties reached Bentley's gate, or reached a point in the road near Bentley's gate, Talt Hall and Quillen stopped their mule and appellant proceeded on across the creek, and after he had crossed the creek appellant's evidence shows that Talt Hall directed him to go on down the road, whereupon appellant turned around and, in substance, said that he was going down the road, but that he would do it in his own way. Appellant and Talt Hall, then at a distance of some 10 or 15 steps, Talt still being on the mule, got into an angry wordy altercation, whereupon appellant's sister, who was in the party, called to her brother, Marion Hall, who had gone on ahead and was out of sight over a slight rise in the road, to come back and arrest them and prevent a difficulty, Marion Hall being thought by her to be clothed with some sort of official authority by reason of his having been designated by the constable of the district the night before to aid in keeping the peace at the election. Thereupon Marion Hall came back, but before he reached Talt Hall and Quillen they had dismounted in response to a suggestion of Talt Hall to Quillen that "we get down and show them what we can do." Marion Hall crossed the creek where Talt Hall and Quillen were and undertook to quiet Talt, and they got into a sort of tussle there among several of them, and appellant quickly crossed to where they were. Talt Hall had never gotten his pistol out of his saddle pockets; during the tussle he called to Willard Hall to get his pistol, and when Willard undertook to get it out of the saddle pockets, Albert Hall, another brother of appellant, got hold of it and took it from Willard. About that time the shooting began, and when it was over Marion Hall, Albert Hall, Talt Hall and Quillen were dead, appellant was shot through the arm and Albert Hall's wife through the foot.

Two or three witnesses for the Commonwealth said that after the main part of the shooting was over Marion and Albert Hall and Dunk Quillen were down, and

while Talt Hall was leaning over the prostrate form of Quillen, appellant, from behind, shot him in the back of the neck, and at least two witnesses said there was evidence of powder-burn on the back of his neck.

On the other hand, appellant states, and in some respects his testimony is corroborated, that when his brother, Albert Hall, got Talt Hall's pistol, that he thought the danger was then all over and he turned and started again to go across the creek, but had only gone a few steps when the shooting began, and that either the first or second shot took effect in the back part of his arm, and that he then turned and saw Dunk Quillen and Albert Hall shooting at each other, and fired one shot at Dunk Quillen; that he thought in the excitement that Talt Hall and Marion Hall were shooting at each other and he then turned and fired one shot at Talt Hall, and that he did not know whether he had struck either one of them.

There is no substantial error in the admission or rejection of testimony, and the only error we discover in the instructions is in instruction No. 5, giving the law of self-defense, that instruction being as follows:

"If the jury shall believe and find from the evidence that, at the time defendant shot and killed the said Talt Hall, if he did shoot and kill him, he, defendant, believed, and had reasonable grounds to believe, that he or his brother, Albert Hall, or his brother, Marion Hall, was then and there in danger of death or the infliction of some great bodily harm at the hands of said Talt Hall, and that it was necessary, or was believed by the defendant, in the exercise of reasonable judgment, to be necessary, to shoot the deceased in order to avert that danger, real or to the defendant apparent, then the jury will find the defendant not guilty."

The evidence shows that Talt Hall and Quillen went to the election together; that they went in the school house together to make the remonstrance above referred to; that they were together throughout the afternoon; that they had taken dinner together at Quillen's home nearby; that Quillen had bought a pistol that afternoon while in company with Talt Hall, and had borrowed the money from Talt Hall with which to pay for it; that they had left the school house together on the same mule, and had remained together up to the time of the difficulty; and that just before they alighted from the mule

that Talt. Hall said to Quillen, "let's get down and show them what we can do," whereupon they both jumped off the mule and shortly thereafter the shooting began.

Under this evidence, tending to show that Talt Hall and Quillen were acting in concert, not only throughout the difficulty, but throughout the whole day, it is appellant's contention that the instruction on self-defense should have embraced the idea that if he believed, and had reasonable grounds to believe, that he or either of his brothers was then and there in danger of death or the infliction of great bodily harm either at the hands of Talt Hall or Quillen or others acting in concert with Hall, and that it was necessary, or was believed by him to be necessary, in the exercise of a reasonable judgment, to shoot Hall in order to avert such danger, real or apparent, then he was entitled to an acquittal.

Under repeated rulings of this court there can be no doubt of the correctness of this contention.

Many judgments of conviction in similar cases have been reversed by this court for the failure to embrace this idea in the instructions, where the evidence of concert between the parties was much less convincing than it is in this case. Lucas v. Commonwealth, 141 Ky.; 281; Stone v. Commonwealth, 110 S. W., 235; Magan v. Commonwealth, 119 S. W., 734; Helton v. Commonwealth, 87 S. W., 1073; Watkins v. Commonwealth, 97 S. W., 740; Bowling v. Commonwealth, 126 S. W., 360.

As the judgment must be reversed for this error in the instruction, it is unnecessary to consider the complaint that the jury was permitted to separate during the trial.

For the reason indicated the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.