## Deaton, Haddix and White v. Commonwealth.

(Decided October 2, 1925.)

### Appeal from Breathitt Circuit Court.

1. Homicide—Finding of Guilt Held Not so Flagrantly Against Evidence as to Require Reversal.—In a prosecution against deputy sheriff for murder, where evidence was in dispute as to whether decedent shot first in attempt to evade arrest for making whiskey, a finding of guilt held to be not so flagrantly against weight of evidence as to justify a reversal, which is granted only when verdict is so patently against the truth as to shock the conscience of the court.

2. Homicide—Instruction that Making of Whiskey did Not Justify Officer in Shooting to Kill on Attempt to Escape Held Proper. —In a prosecution of deputy sheriffs for murder, instruction that making of whiskey was only a misdemeanor, and officers had no right to shoot to kill on attempt to escape arrest, was not error, since state enforcement act did not require officers to enforce federal laws, which would have made decedent's act a felony, justifying killing.

3. Intoxicating Liquors—State Enforcement Act, by Omission, Held to Repeal Provisions of Prior Act Requiring State Officers to Enforce Federal Laws.—Enforcement act of 1922, which under section 45 expressly superseded all other laws and was complete in itself, omitting under section 23 provisions of Ky. Stats., section 2554a34, requiring state officers to enforce federal prohibition laws, repeals such provisions.

A. S. JOHNSON and A. H. PATTON for appellant Deaton.

W. L. KASH, E. C. HYDEN and R. A. DUNN for appellants Haddix and White.

A. F. BYRD, FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

In February, 1923, Deaton, White and Carpenter
were each deputies under the sheriff of Breathitt county,
and Haddix was a constable of that county.

They went together to a remote section of the county
for the purpose of serving papers for an approaching
term of the circuit court; but while in that section they
received information of the existence and location of
some moonshine stills, and sought to find and destroy
them.   They destroyed one, and on the following day
went to Horse branch of Quicksand creek in search of an-
other.   They finally located it, and two of the party got
near enough, without being observed, to ascertain that
there were some men in the small shack where the liquor
was then being made.   After notifying the other mem-
bers of their party some one or more of them demanded
of the occupants of the shack that they come out and sur-
render.   Two of the occupants, Howard and Bradley,
came to the door of the shack and, seeing the officers, im-
mediately went back into it, and then again emerged from
the door, but instead of surrendering to the officers they
undertook to escape and evade arrest, and while so doing
Howard was shot in the back by some one of the officers,
from which he subsequently died.

Each of the four officers was jointly indicted,
charged with the murder of Howard, but thereafter the
prosecution was dismissed as to Carpenter.   The other
three were placed on their joint trial, and were each
found guilty of manslaughter and sentenced to five years'
imprisonment.

The indictment is merely a joint one against the four
defendants, charging them all with the murder of How-
ard; and there is no charge either that the defendants
conspired together to kill him or that any one or more of
them killed him while the others aided and abetted.

The two grounds for reversal are (1) that the ver-
dict of guilty is flagrantly against the evidence on the
issue whether or not the decedent while attempting to
evade arrest first shot at the officers as he was fleeing,
and (2) that the instructions did not embrace the whole
law of the case because they did not in substance say to
the jury that under the federal laws, which it was, as
assumed, the duty of the officers to enforce, the decedent
and his companions by the act of making illicit liquor

were guilty of a felony, as the evidence tended to show they had entered into a conspiracy or agreement to do so.

On the first question the evidence for the Commonwealth in dying statements made by the decedent is to the effect that he had no pistol in his possession when he undertook to escape arrest, and that neither he nor Bradley fired a shot upon that occasion. Bradley testified on the trial and fully corroborates the statement of the decedent, although he admits that he himself at the time had a pistol; and to some extent these statements of the decedent and Bradley are corroborated by their associate Davis who, while stating that he remained in the shack when the other two undertook to escape, and consequently did not see any of the shots fired, did state that no shot was fired until after each of his associates had gotten some distance from the shack going up the mountain, whereas the evidence of the defendants is to the effect that Howard fired two shots directly at one of the officers immediately after emerging from the door of the shack, and that one of those shots grazed the face or neck of that officer and its force knocked him down, whereupon the other three officers seeing him fall believed he had been killed, and for the first time opened fire on the decedent after that had occurred. The three defendants on trial each testified to these facts, and one of them testifies that when he followed the decedent up on the mountain and found him wounded he arrested and took from him a pistol of a certain description, all the loads from which had been fired. They all further state that a pistol was found on Bradley when he was shortly thereafter arrested, and some or all of the shots had been fired from that, and that after Bradley's arrest he had a number of cartridges in his possession.

The weight of the evidence seems to be to the effect that both Howard and Bradley fired at the officers in their efforts to escape, and fired upon them before Howard was shot; but in the light of the positive statements of the decedent and of Bradley, which are in some measure corroborated by Davis, we find it impossible to say that the finding is so flagrantly against the weight of the evidence as to justify a reversal on that ground. Under our system of jury trials, it is only when the finding of a jury is so patently against the truth of the matter as to shock the conscience that the courts may declare it flagrantly against the evidence, and we do not feel justified in so declaring under the evidence as stated.

The court instructed the jury that if Howard first fired upon any of the officers, then the officers had the right to use such means as were necessary or as reasonably appeared to them to be necessary, to bring about his arrest and prevent his escape, even to the taking of his life; but in the same instruction said to the jury that the making of illicit whiskey was only a misdemeanor, and, in substance, that the officers had no right to shoot and kill him because he attempted to escape and evade arrest for the commission of a misdemeanor.

The argument for the appellants is that so much of this instruction as told the jury that the illicit making of whiskey was merely a misdemeanor was erroneous, because they say that under the enforcement act of this state it was their duty to enforce the federal enforcement act, and that under the laws of the United States the decedent and his companions, Howard and Davis, as shown by the evidence, were guilty of a conspiracy, and that one guilty of such a conspiracy under the federal laws is guilty of a felony, and that, therefore, wholly apart from the question whether Howard fired upon the officers first, they had a right to shoot and kill him because he had been guilty of a felony under the federal law, which it was their duty to enforce.

Assuming only for the purposes of this case that it would be valid for one sovereignty to require its officials to enforce the laws of another, we find that the enforcement act of this state in force in 1923 had no such requirement.

It is true that in the enforcement act of this State in force prior to 1922 it was expressly made the duty of all officers and conservators of the peace not only to enforce the provisions of the state act, but also "the acts of the Congress of the United States enacted to enforce the 18th Amendment to the United States Constitution." Kentucky Statutes 2554a-34. But in the enforcement act approved March 22, 1922, which by its express terms (sub-sec. 45) provides it "is intended to be a full and complete law on the subjects covered by same and it is intended to supersede all other laws of the Commonwealth of Kentucky on said subjects," the requirement that state officials should see to the enforcement of the federal act is omitted, and therefore repealed. The last named act, subsection 23, does make it the duty of the courts and judges of this state, and all officers and conservators of the peace, to enforce the provisions of the state act,

but makes no reference whatsoever to the enforcement by them of the federal act.

It is apparent, therefore, that no duty devolved upon appellants at that time to enforce the provisions of the federal act, and the circumstances indicate clearly that they at the time had no such purpose; and as that duty did not devolve upon them the court properly instructed the jury it was only a misdemeanor to manufacture whiskey under the state act, and that appellants had no right to shoot and kill Howard in his effort to evade arrest unless he had first committed a felony by firing at the officers. There is no escape from this conclusion.

Judgment affirmed.

### Response to Petition for Rehearing.

#### Per Curiam.

The petition complains only of the failure of the court to pass upon the alleged error of the trial court in authorizing a conviction of the appellants, or any of them, for aiding and abetting in the commission of the crime, when the indictment charges no aiding and abetting, but is merely a joint indictment against each of the defendants, charging them jointly as principals with the commission of the crime.

The correct rule appears to be that where a defendant is alone indicted and charged as principal with the commission of a crime, and the evidence discloses that while he did not actually commit the crime he was present and aided and abetted another, or others, in so doing, there can be no conviction under that indictment for aiding and abetting, for the reason that he has not been brought into court charged with aiding and abetting. But where two or more defendants are jointly indicted charged as principals with the commission of a crime, and there is nothing said about aiding or abetting, if the evidence discloses that one of them was the chief perpetrator and the other or others present and aiding and abetting, an instruction authorizing their conviction for aiding and abetting is proper because they are all regarded as principals.

In Hollin v. Com., 158 Ky. 427, this whole question was gone into and exhaustively considered; all the authorities were reviewed and that conclusion was reached.

The conclusion is obviously logical, for if an aider and abettor of others in the commission of a crime is a

principals, and where they are all jointly charged as principals, when the evidence discloses that some one of them aided and abetted while the other was guilty of the principal act, then obviously they are all guilty as principals. But when one alone is charged with being principal, and no other is charged in the indictment with him, then if the evidence shows he was only an aider and abettor, to authorize his conviction as such, without charging the principal with him, would be to convict him of a crime of which he was not charged, and of which he had no notice when he came into court.

An examination of the cases relied upon by appellants will disclose that they are not in conflict with this rule.

Petition for rehearing overruled.