## Buttery v. Commonwealth.

(Decided October 30, 1925.)

## Appeal from Clay Circuit Court.

Homicide—Failure of Instruction on Self-Defense to Include Apprehension of Bodily Harm at Hands of Others Acting in Concert with Deceased Held Error, and to Require Reversal.—Where evidence showed that men who, with deceased, came on defendants, were acting in concert with him, an instruction on self-defense, giving accused only the benefit of self-defense, based on accused's apprehension of bodily harm from deceased, without embracing accused's apprehension of such harm at the hands of the men present and acting in concert with deceased, held error, and to necessitate reversal.

LEWIS & LEWIS and T. H. WEBB for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant, Shelby Buttery, and Pit Nicholson were jointly indicted, charged with the murder of Shelby Marcum. They were charged in one count with a conspiracy as a result of which one of them killed Marcum, in another they were jointly charged with the murder, and in three other counts it was charged that each of defendants shot and killed Marcum while the other two were present aiding and abetting.

Appellant on his separate trial was found guilty of manslaughter and sentenced to 18 years' imprisonment, and prosecutes this appeal.

Several grounds for reversal are urged, some of which will probably not occur upon another trial and others of which have no sufficient merit to authorize a reversal; but because of an error in the self-defense instruction the judgmnt must be reversed.

To elucidate that error it will be necessary only to give a short statement of the facts, and because there must be another trial we shall go no further into the evidence.

In September, 1921, there was a party at the home of Hômer Marcum, who lived on the farm of his father, Tyra Marcum, but in a separate house some distance from his father's home. The Marcums and the Butterys had lived in the immediate vicinity of each other for a number of years, and the younger ones had attended the same school in the nighborhood, including appellant and the decedent, Shelby Marcum. So far as is disclosed in the record, up to the time of the homicide there had been no trouble or difficulty of any nature between any members of the two families. Appellant and Shelby Buttery were brothers and started to go to a party they thought was to be at the home of a man named Tompkins, and had passed the home of Homer Marcum on their way to the Tompkins' house when they learned the party was at the latter place. On the way they met with Nicholson, and the three proceeded together.

Without going into details it is sufficient to say that there was unmistakable evidence of the presence of whiskey at or about the Homer Marcum place, and it is suggested in the record that appellant or one of his associates had taken it, or some of it, there. However that may be, it is clear there was considerable drinking at or about the party, and that young Ted Marcum, a relative, but not a near relative, of the dead man and his father, came to the party and became intoxicated to such an extent as that he was put to bed. But there had been something in the nature of a disturbance or argument between him and one or both of the Butterys, the precise character of which is not disclosed in the evidence. Then for some reason, which likewise is hazy, there later came about some sort of disturbance between some of the Marcums and one or more of the three defendants.

At any rate the three defendants left the home of Homer Marcum and were going in the direction of their own home on foot, having, as we gather, left their mules hitched near the Marcum home. After they had thus left, the dead man, Shelby Marcum, left the Homer Marcum house for some purpose, it being claimed by the Commonwealth that he went either for a bucket of water or to get some strings for a musical instrument, while it is claimed by defendants that he left there with the

avowed purpose of pursuing them and with a pistol in his hands, and over the objection of some relatives. About the same time he left the house four others, including two Marcums, followed him and the five came upon the three defendants at a point about 100 or 125 yards from the Homer Marcum house, at or near a wire fence, when the shooting immediately began and Shelby Marcum was killed and Pit Nicholson shot in the back.

The evidence tends to show that the shooting began immediately after the parties overtook or came upon the defendants, and that each of the men in the party with Shelby Marcum was armed, and all of them, with possibly one exception, participated in the shooting that followed.

There was evidence tending to show that the men who left the house just after Shelby Marcum did, and who came upon the defendants at the same time or about the same time he did, were acting in concert with him, and the complaint of the self-defense instruction grows out of this fact.

It has been the rule in this jurisdiction for many years that in a homicide case, where the evidence tends to show that throughout the difficulty others who were present and participated in it were acting in concert with the deceased, an instruction on self-defense should embrace the idea that if defendant believed and had reasonable grounds to believe that he was then and there in danger of death, or the infliction of great bodily harm, either at the hands of the decedent or of such others acting in concert with him, and it was necessary or believed by him to be necessary to avert such danger, he should be acquitted.

The instruction in this case only gave to the appellant the benefit of self-defense if he was, or believed he was, at the time in danger of death, or the infliction of great bodily harm, at the hands of Shelby Marcum, and did not embrace those then present and acting in concert with him.

It is unnecessary to enlarge upon the error in such an instruction, for it has been often condemned. Hall v. Com., 162 Ky. 439; O'Hara v. Com., 164 Ky. 405.

We perceive no other prejudicial error in the record, but because of this error in the instruction the judgment must be and is reversed, with directions to grant the appellant a new trial, and for further proceedings consistent herewith.