## Osborne v. Commonwealth.

(Decided February 26, 1932.)

THOMAS J. UNDERWOOD for appellant.

BAILEY P. WOOTTON, Attorney General, and BASIL P. COOPER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Lucas Osborne, upon his trial in the Garrard circuit court under an indictment for murder, charging him with the killing of Eph Mason, was found guilty of voluntary manslaughter and sentenced to confinement in the penitentiary for twenty-one years, and, to reverse the judgment rendered upon that verdict, he prosecutes this appeal.

The facts, disclosed by the record, are these:

The appellant, Lucas Osborne, was, at the time of his shooting and killing Eph Mason, a boy seventeen years of age and living with his sister and brother-in-law, Joe Grant, who were tenants of and living upon the farm of Grant's stepfather, Eph Mason.

On the day of the killing, the appellant, Osborne, was engaged in hauling wood, with Mason's wagon and team, to the Joe Grant home, until 3 or 4 o'clock in the afternoon, when his friend, Luther Brock, came by, and together they went hunting, and, after hunting a couple of hours, drank some moonshine whisky, and returned to the Grant home, rested a while, and then went to the home of Tom Freye, a half mile distant.

Tom Freye was a nephew of Eph Mason, and he and his family, together with Joe Hopkins and his family and also Luther Brock, lived upon Mason's farm. Eph Mason's home was about midway between the homes of Grant and Tom Freye.

It appears that, upon Osborne's visit to the Freye home, he carried along some moonshine whisky, and, upon entering the home, offered drinks to Tom Freye,

Joe Hopkins, and the others, who declined.it; he then attempted to force the whisky on two of Hopkins' small children, who were told by their father not to drink it or he would whip them. This appears to have angered the appellant, who grabbed Hopkins' hat, proposing to fill it with moonshine, cursed Hopkins and threatened to strike him, at which behaviour Freye became incensed, and, in a threatening manner, ordered appellant out of his house, which appellant left, it appeared, in a mood of anger and resentment.

Within a few minutes thereafter, three shots 'were fired from a distance near the Freye house through a window into the room that appellant had just before left, the bullet, from one of these shots, narrowly missing an infant asleep on a bed in the room.

Brock and Freye, armed with his 45-caliber Winchester, immediately rushed out to apprehend this assailant. They searched in vain for him about the house, but found that he had disappeared.

Osborne was accused of firing these shots by Brock and Freye, because of his supposed resentment at his having been ordered from the house, and, also, because they claimed to recognize the shots, by their report, as having come from the rifle which they knew the appellant was using that day.

It appears further that Joe Grant also heard these shots a half mile away at his home, and came over to Freye's to investigate their meaning. There he found Freye, armed with his Winchester, hunting about the place for Osborne, whom he charged with having fired the three shots.

Grant at once returned home, where he met Osborne, to whom he reported that he had gone to the Freye home and there found Freye looking for him with a gun, and that he accused Osborne of having fired into his home.

Tom Freye. and Brock, failing to find Osborne, at once decided to go and report this trouble with appellant to Freye's uncle, Eph Mason, which they did. Freye carried his rifle along, and on reaching Mason's home they told him of Osborne's visit and misconduct at the Freye home and of their ordering him out of the house, also accusing him of having fired the three shots into their home.

Mason, being thus informed of these happenings, at once got his shotgun and proposed that they go to Grant's

home, where Osborne was living, and take the gun from Osborne, or get Grant to have him give it up. Mason, Freye, and Brock, the first two armed, at once set out for the Grant home, looking for Osborne. Upon reaching it, they saw Joe Grant standing in his front door, but to whom they did not stop to speak, and also saw the appellant, standing over to the side of the house, slightly behind a tree and who, when they had advanced to within about ten steps of him called out to them, "Who you fellows looking for with them G—— damn guns?" Whereupon, Eph Mason, who was the leader of the three men, according to the commonwealth witnesses, ordered appellant to put down his gun, but who, appellant testified, answered, "Looking for you, G—— damn you," when immediately it is agreed the appellant fired into Mason, fatally wounding him and from which shooting he died in some two hours.

Appellant testifies that Mason, upon making this answer to him, instantly attempted to raise his gun to his shoulder to shoot him, but that he shot first, though not waiting to get his gun to his shoulder or else Mason would have "got him."

The evidence is that Mason, when shot, staggered backward, discharging his gun high over Osborne, into the eaves of the Grant house, and fell.

The location of Mason's wounds, caused by Osborne's shot, show that the bullet passed across Mason's left arm, a little above the wrist, and entered the middle of his stomach. By this evidence, the commonwealth contends, it is proven that Mason did not have his gun drawn on Osborne when he was shot by him.

It also appears, when appellant fired and ran, that he was pursued for a distance by Tom Freye, who twice shot at him, but without hitting him or preventing his escape and flight to his brother's home in Rockcastle county, where he was later arrested for the shooting and killing of Mason.

The defendant filed motion and grounds for a new trial, which being overruled and judgment entered upon the verdict, defendant has appealed. In his brief, he now presents and argues four grounds as justifying a reversal of the judgment, to wit: First, that the verdict is not supported by the evidence; second, that the commonwealth introduced illegal evidence; third, that the com-

monwealth committed error in showing the political affiliations of the parties to the jury; and, fourth, that the instructions given by the court did not sufficiently present the right of the defendant to defend himself.

1. Appellant first insisted that the verdict is not supported by the evidence.

From a careful review of all the evidence presented by the record, we are of the opinion that his first ground is without merit.

The rule applicable thereto is well stated in the case of Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4, 6, where it is said: "A verdict is not palpably against the evidence, when it is reasonable for the jury to find from the proven facts and circumstances that the defendant was guilty. Burden v. Commonwealth, 216 Ky. 787, 288 S. W. 742; Deaton v. Commonwealth, 211 Ky. 651, 277 S. W. 1001; Winchester v. Commonwealth, 210 Ky. 685, 276 S. W. 575. The credibility of the witnesses must be determined by the jury, and that tribunal is at liberty to accept the testimony of one or more witnesses to the exclusion of that produced by others, or to accept part of the testimony on both sides and reject any portion not believed by it. The function of finding the ultimate facts from conflicting testimony is imposed by law upon the jury." Perkins v. Commonwealth, 240 Ky. 129, 12 S. W. (2d) 297; Utterback v. Commonwealth, 190 Ky. 138, 226 S. W. 1065; Jordan v. Commonwealth, 340 Ky. 391, 42 S. W. (2d) 509; Abdon v. Commonwealth, 237 Ky. 21, 34 S. W. (2d) 742; Brown v. Commonwealth, 226, Ky. 255, 10 S. W. (2d) 820; Fannin v. Commonwealth 200 Ky. 635, 255 S. W. 514.

2. It is next urged that the commonwealth introduced "illegal evidence" in four instances complained of: First, as to appellant's visit to the Freye home; second, as to the shots fired into that home and with which the appellant was accused; third, as to the conversation had between Brock and Freye and Mason at Mason's home, when appellant was absent; and, fourth, in admitting testimony of Mrs. Mason to the effect that her husband, just before his death, told her that the appellant, Osborne, had shot him.

This court has frequently held that evidence of this character is admissible as coming within the exception to the general rule, providing that evidence is not admissible, which shows, or tends to show, that the accused, in

a criminal case, has committed a crime wholly independent of the offense for which he is on trial. This rule of exclusion does not apply where the subject matter under investigation is of such a nature that it may consist of several stages or continuous acts, all constituting one transaction. Such evidence is received, not because it is proof of the other crime, but because of its relevancy to the charge upon trial (10 R. C. L., pages 939 and 940) and is admissible in proof of motive, intent, and animus, where such constituted an ingredient of the offense charged, notwithstanding the fact that such evidence tending to establish intention or motive may disclose a different crime in law, 8 R. C. L., page 202.

This court, recognizing the admissibility of this class of evidence as an exception, based on grounds equally sound and valid as those supporting the general rule, requiring the exclusion of evidence as to prior and distinct offenses, has, in the recent case of Perkins v. Commonwealth, 227 Ky. 129, 12 S. W. (2d) 297, thus declared this rule to be:

"It is complained that the court erred in the admission of evidence respecting appellant's conduct on previous occasions. Mrs. Collinsworth and her daughter were permitted to testify that upon one or more occasions the appellant had been at the home of deceased armed and making boastful and menacing remarks. It is argued that the testimony offended the rule of practice which precludes evidence of other and distinct offenses, unless it is needed to establish motive, identity, or the like. Wireman v. Commonwealth, 203 Ky. 57, 261 S. W. 862. The evidence allowed in this case was within the exception to the rule. It was not proof of a separate and distinct offense wholly unrelated to the present charge, but was such conduct as tended to show the attitude of the appellant toward the deceased, furnishing some explanation of his readiness to shoot on mere resentment, when he was in no apparent danger of great bodily harm. The effect of the evidence was to indicate malice and predetermination to injure the deceased. . . .

"It is well settled by the authorities that conduct such as was proven in this case, preceding a homicide, is admissible on the trial of an indictment

for murder. Morse v. Commonwealth, 129 Ky. 295, 111 S. W. 714 [33 Ky. Law Rep. 831, 894]; Thomas v. Commonwealth, 185 Ky. 229, 214 S. W. 929; Hickey v. Commonwealth, 185 Ky. 576, 215 S. W. 431.''

It is true that the third complaint of objection No. 2, regarding the conversation between Mason, Freye, and Brock, had in the absence of appellant, presents a rather doubtful question as to its admissibility, but as it could have been shown by Freye and Brock to Mason that shots had been fired into their home after the defendant had just been ordered therefrom, leaving the only inference to be drawn therefrom that Osborne, from such motives and ill will, had fired the shots, it is difficult to see where the appellant was prejudiced by such conversation had between them in appellant's absence, especially when it is later shown by the evidence of Joe Grant, his brother-in-law, that Osborne himself admitted that he had fired these shots.

As to the fourth complaint made by objection No. 2 to the testimony of Mrs. Mason, the same is at best trivial and hypercritical, and of neither merit nor moment, as being in no wise prejudicial to the defendant, in that her statement is given in evidence as to the killing of her husband, which is an uncontradicted fact, which is not only by any one undenied, but is admitted, and testified to by appellant himself, that he shot and killed Eph Mason.

Influenced by these considerations, we are induced to conclude that the admission of the evidence complained of was without prejudice to the substantial rights of appellant.

3. It is next complained that the court committed error in the manner and matter of admitting evidence showing the political affiliations of the parties to the jury and in the improper use, by the commonwealth's attorney in his argument, of the political affiliations of the deceased and defendant.

It is enough here to say that the defendant was supported in his defense only by his testimony given in his own behalf and by the affidavits of his sister, Mrs. Joe Grant, and Monroe Brock and several character witnesses, by whom he attempted to show that the deceased Mason's general reputation for peace and lawfulness

was bad in his community, and that he was considered a violent and dangerous man.

The commonwealth's attorney, in cross-examination of these character witnesses for appellant, brought out the fact that they were Republicans, whereas the deceased, Mason, had been an influential Democratic worker in that county, and did, by the manner of his questioning them, inject politics and ridicule of the witnesses into his examination of them, and asked practically every witness if they were Republicans and Republican workers and by thereafter delivering a great political harangue, exhorting the jury to give "this defendant the extreme penalty," because he had killed a splendid man, a Democrat of great influence, and, because of this, the witnesses for the defense had come as Republican workers and politicians to testify for the defendant, and were testifying through their political prejudice; that Eph Mason, the deceased, was a leader among the Democrats of his part of the county, and when he "hollered the people around him followed," or words of like import, all of which unduly influenced and was intended to unduly influence the jury, which was composed of a large majority of Democrats and Democratic workers, to inflict a more severe punishment than the law and facts warranted.

It appears that the attorneys on each side indulged somewhat in improper cross-examination, and that each to some extent, improperly injected politics into this trial involving the defendant's life and liberty.

It is conceded that the commonwealth's attorney has the right to argue, with some latitude, the matters in evidence, making all reasonable and fair inferences to be drawn therefrom, but that does not license, nor can we too strongly condemn, the very prevalent tendency of public prosecutors to exceed the proper bounds of lawful and fair argument, by dramatic appeals, adjurations, and exhortations outside the reasonable boundaries of the facts in evidence and legitimate inferences to be drawn therefrom, and we cannot refrain from condemning such political invective here used in argument, and the trial court should, when it is persisted in, deprive such offenders of the fruits of their labor, even going to the extent if necessary, of discharging the jury and granting a new trial where the evident effect of such argument is to endanger and to render doubtful the defendant having re-

ceived a fair and impartial trial of the charge made against him. But as the judgment will have to be reversed upon another ground, we will not carry our remarks further as to the misconduct of counsel complained of. Louisville & N. R. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S. W. 674.

4. The last ground urged by appellant for a reversal of the judgment is based upon the claim that the instruction given by the court failed to properly set out the defendant's right of self-defense arising under the circumstances shown by the evidence. The court covered the question of this right of self-defense by giving instruction No. 3, which is as follows:

> "If you shall believe from the evidence that at the time the defendant shot said Eph Mason, if he did so do, he believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Eph Mason, and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment, to be necessary to shoot the deceased in order to avent that danger, real or to the defendant apparent, then you will acquit the defendant upon the ground of self-defense or apparent necessity."

Appellant objects to this instruction because it fails to state the whole law of self-defense through the court's failure to incorporate into it this addition thereto: "Where others are acting in concert with one's assailant, his right of self-defense is enlarged by reason of any danger, actually or apparently impending, at the hands of any of them."

The appellant contends that the evidence showing the advance of the three confederates, Mason, Freye, and Brock, with presented guns, made upon him, entitled him to the extended instruction, while the appellee contends that this requested additional instruction, asked by appellant, is here improper and doubtless based on the fact of such an instruction having been given in the case of Lucas v. Commonwealth, 141 Ky. 281, 132 S. W. 416.

Appellee contends that the dissenting opinion rendered in that case represents the proper rule of law to here be applied.

Answering this, we are of the opinion that the appellee is in error in making this contention, inasmuch as the dissenting opinion delivered in the case was in no wise based upon the legal propriety of giving such enlarged instruction upon the law of self-defense, in a proper case of one's being attacked by parties acting in concert against him, but was expressly stated in the dissenting opinion that their dissent was based only upon their failure to find, from the evidence or by fair inference therefrom, that the defendant was in that case being attacked by parties acting in concert. The instruction on the law of self-defense, as therein given, has been frequently quoted with approval and reaffirmed by this court, as was done in the very recent case of Williams v. Commonwealth, 228 Ky. 322, 14 S. W. (2d) 1077. It was again approved and such instruction directed given in the case of Buttery v. Commonwealth, 211 Ky. 23, 276 S. W. 969, 970, wherein the court used this language:

"It has been the rule in this jurisdiction for many years that in a homicide case, where the evidence tends to show that throughout the difficulty others who were present and participated in it were acting in concert with the deceased, an instruction on self-defense should embrace the idea that, if defendant believed, and had reasonable grounds to believe, that he was then and there in danger of death, or the infliction of great bodily harm, either at the hands of the decedent or of such others acting in concert with him, and it was necessary or believed by him to be necessary to shoot decedent to avert such danger, he should be acquitted.

"The instruction in this case only gave to the appellant the benefit of self-defense if he was, or believed he was, at the time in danger of death, or the infliction of great bodily harm, at the hands of Shelby Marcum, and did not embrace those then present and acting in concert with him.

"It is unnecessary to enlarge upon the error in such an instruction, for it has been often condemned. Hall v. Commonwealth, 162 Ky. 439, 172 S. W. 667; O'Hara v. Commonwealth, 164 Ky. 405, 175 S. W. 637."

The court will therefore, upon another trial of this action, give the correct instruction upon the law of self-

584

defense as set out and given in Buttery v. Commonwealth, supra.

Because of this error in the instruction, the judgment should be, and is, reversed, with directions to grant the appellant a new trial, and for further proceedings consistent herewith.