Cecile RICHARDSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 17, 1958.

Rehearing Denied May 16, 1958.

W. Clarke Otte, Frank E. Haddad, Jr., Louisville, for appellant.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

Appellant, Cecile Richardson, was convicted of the offense of abortion. KRS 436.020(2). She was sentenced to six years in the state reformatory. On appeal, she urges that: (1) Evidence obtained from her home by a search warrant was admitted improperly; (2) the whole law of the case was not given; (3) a mistrial should have been declared because certain inflammatory newspaper articles were available to the jury during the trial; and (4) the prosecuting attorney's conduct during the trial and his closing argument were improper.

Appellant denied having performed an abortion and attempted to establish an alibi. The evidence for the prosecution shows that appellant performed an abortion on Bessie Mae Shupe at appellant's home on May 10, 1956. Two days later, the victim was examined by two doctors at a Louisville hospital. They testified that she was six to eight weeks pregnant and diagnosed her case as an incomplete abortion. She was released from the hospital and placed under the care of a specialist. After her release and before she received any care from the specialist, she had a miscarriage.

On May 17, 1956, Harold Shupe, husband of Bessie Mae, procured a warrant of arrest for appellant in which she was charged with having committed an abortion. On the same day, a search warrant was issued by a city police judge based on the affidavit of a police officer. That evening, appellant's house was searched pursuant to the search warrant, and certain medical instruments and quantities of drugs and medicines were found. Photographs were taken of the room in which the abortion was alleged to have been committed. Most of the equipment and drugs which were seized in the search were found in this room and are shown in the photographs. The evidence obtained by the search, which included the testimony of the participating officers, photographs, and equipment and medicines seized, was introduced at the trial.

Appellant contends that the evidence was inadmissible because the affidavit for the search warrant was defective, in that it did not contain sufficient facts to form the basis for a judicial determination of probable cause or reasonable grounds for issuance. The search warrant was based on the affidavit of a police officer, the pertinent part of which is:

"Affiant states that his grounds for probable cause for the issuance of this Search Warrant consists of the following facts. Sworn affidavit on file given by, Bessie Mae Shupe (W) 32, 225 E. College, who was the victim of said Abortion on May 10th, 1956, at the above address. affidavits supporting the aforesaid facts, alleging that the aforesaid premises is occupied, managed and under the control and direction of the aforesaid, Cecilia (sic) Richardson and contained the evidence sought to be obtained, namely, medical instruments used in performing abor-

tions and all data and records concerning abortions performed."

■ There are two bases for the requirement of a written affidavit as a prerequisite to the issuance of a search warrant: (1) to enable the officer to determine judicially whether probable cause exists for issuing the warrant; and (2) to fix responsibility for civil redress or criminal prosecution if the accusation is false. Abner v. Commonwealth, Ky., 298 S.W.2d 314; Goode v. Commonwealth, 199 Ky. 755, 252 S.W. 105; Colley v. Commonwealth, 195 Ky. 706, 243 S.W. 913; 79 C.J.S. Searches and Seizures § 74, p. 863. The affidavit in question has been read and considered by the Court and found to conform to the requirements of the authorities cited, as well as to the rule in Price v. Commonwealth, 195 Ky. 711, 243 S.W. 927, relied upon by appellant. The foreign cases cited are not controlling. The evidence obtained as a result of the search was admissible.

■ The court gave an instruction based on KRS 436.020(2). Appellant contends that an instruction should have been given under KRS 436.020(1), which provides a lesser penalty. The first part of the statute refers to an attempted abortion while the latter part of it refers to a consummated abortion, causing the death of an unborn child. Appellant insists that there was no proof of the death of an unborn child resulting from the abortion. The uncontradicted proof showed that the victim discharged the fetus as a result of an artificially induced miscarriage. The instruction given conformed to the uncontradicted proof. The defense was a traverse. No other instruction was warranted. Monson v. Commonwealth, Ky., 294 S.W.2d 78; Merida v. Commonwealth, Ky., 243 S.W. 2d 652; Duvall v. Commonwealth, 225 Ky. 827, 10 S.W.2d 279.

■ Complaint is made by appellant that the jury should have been discharged because certain newspaper articles were available to it during the trial and before the verdict was returned. The evening and morning editions of the local newspapers contained an article on the trial. They showed a picture of appellant under the headlines: "Mother of 3 Testifies She Paid $50 For An Abortion in Woman's Home" and "Witness Tells Of Operation". The name of appellant appeared under the picture. The three-column article near the end contained the following:

"She will be subject to the same sentence on the other two charges if the Commonwealth elects to try her on them, Higgins said.

"Under Kentucky law each of the abortion cases must be tried separately, Higgins explained."

The remainder of the article was a recitation of the trial proceeding and evidence produced.

Appellant contends that the trial court failed to admonish the jury properly. The jury was permitted to separate at night during the course of the trial. At the end of the first day of the trial, the court admonished the jury as follows:

"* * * I want to specifically admonish you not to discuss the facts in this case among yourselves or with anyone. Don't allow anybody else to say anything at all to you about any phase of this case, either directly or indirectly, and if anyone undertakes to do that, that is talk to you about this case, notify the Court, and the Court will take appropriate action. Keep an open mind, and don't come to any conclusion as to the guilt or innocence of the defendant. Reserve that judgment until you are sent to the jury room at the conclusion of the case to consider your verdict. Don't discuss the case in the presence of anybody. I would rather you wouldn't read the newspaper account of the trial, nor I don't want you to do anything that would prevent you from giving a fair and impartial trial

both to the defendant and the Commonwealth. * * *"

At the beginning of the proceedings the next morning, appellant made a motion to discharge the jury. Each of the jurors was examined individually under oath in the judge's chambers. The trial judge, the respective counsel, and the court reporter were present. Seven of the jurors had not seen or read the article. The other five had either seen the headlines or the picture or had had the article called to their attention by members of their respective families. Each member of the jury swore that he had not read the article and had not discussed its contents with anyone. The objectionable part of the article as quoted above had not been read and the jurors were unaware of the pendency of two other charges of abortion against appellant. The examination by the trial court shows that its admonition had been obeyed and does not warrant any presumption that the jurors gave false statements to conceal their disobedience thereof. The motion to discharge the jury was correctly overruled. 53 Am.Jur., Trial, Section 895, page 644; O'Hara v. Commonwealth, 164 Ky. 403, 175 S.W. 637; Gadd v. Commonwealth, 305 Ky. 318, 204 S.W.2d 215. See Ford v. U. S., 5 Cir., 1956, 233 F.2d 56; certiorari denied 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53; State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313, 15 A.L.R.2d 1137; and 53 Am.Jur., Trial, 1957 Cum. Supp., page 48, on discretion of trial judge in permitting examination of jurors as to whether they have read newspaper articles.

■ The conduct of the prosecuting attorney during the trial and parts of his argument are objected to as having been prejudicial to the rights of appellant. Many objections were made by counsel for appellant during the trial. Appellant insists that the cumulative effect of the objections was to cause the jury to think that the defense was trying to hide or cover up something. The trial court passed on the objections, many of which were overruled.

The proof for the Commonwealth established firmly all the elements of the offense. Appellant's only defense was an ineffectual attempt to show that she was not at her home during the fifteen or twenty minute period in which the operation was alleged to have been performed. Appellant received a sentence of six years. The maximum punishment was twenty-one years; the minimum, two years. The verdict of the jury is fully justified under the proof. In view of the nature of the case, it can hardly be said that the conduct of the prosecutor was prejudicial. No merit is found in this contention.

Judgment affirmed.