## May v. Commonwealth.

(Decided April 14, 1915.)

### Appeal from Trimble Circuit Court.

1. Witnesses—Credibility—Trial—Verdict.—The credibility of the witnesses is for the jury; the Court of Appeals will not disturb a verdict because the jury believed one set of witnesses, rather than another.

2. Appeal and Error—Verdict.—A verdict must be palpably against the evidence, or it cannot be disturbed upon appeal.

W. B. MOODY, CLAUDE B. TERRELL and J. W. BARNES for appellant.

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

The appellant, Ernest May, was tried and convicted under Section 1214 of the Kentucky Statutes, of having seduced Goldie Sutherland, a girl 18 years old, under a promise of marriage, and was sentenced to confinement in the penitentiary for not less than one and not more than three years. He appeals, and asks a reversal upon

the single ground that the verdict is palpably against the evidence.

The facts of the case are few, and except as to two material points there are no contradictions in the proof.

It is agreed by the prosecuting witness, Goldie Sutherland, and May, the appellant, that they first became acquainted in the winter of 1912-13, when they met at Providence Church, in Trimble County; that the next time they met, and the first time they were together alone, was about the middle of March, 1913, when they met at the residence of Henry Daugherty; that they went from Daugherty's house in a buggy together to church, a distance of about five miles; that before they arrived at the church they drove off to the side of the road and had sexual intercourse while in the buggy; that they then drove to church and finding there were no services, he drove her back to her home; and the next time they were together was about April 1st, 1913, when they again had sexual intercourse.

Appellant further admits that he wrote Goldie Sutherland the two letters in the record, dated April 21st, 1913, and April 28th, 1913.

So far the appellant and the prosecuting witness agree.

She states, however, and quite positively, that she refused to have intercourse with appellant on the first occasion in March until after he had assured her he would marry her, and that if it had not been for that promise, she would not have consented. She further states that she learned in April that she was pregnant, and notified appellant in June; that he then said he would do what was right by her; that he would do what he had said he would do—he would marry her. Appellant denies he promised to marry the girl, but admits he said to her in April, upon the occasion of their second intimacy, that he would make it all right if anything should happen; and he denies that he ever made love to her; or that he cared for her, although one of the letters tells quite a different story.

The girl testified that she had never had sexual intercourse with any one before the occasion in March, 1913, when she first transgressed with the appellant, and that she had never had intercourse with any other person. There was some proof, however, introduced by the appellant tending to show that her reputation for chas-

tity was bad; and he also read in evidence the deposition of Ira Wiggington, who claims to have had intercourse with the girl in August, 1912, about seven months before her first offense with appellant. The girl contradicted Wiggington in every statement. Wiggington further testified that he had never spoken to any one, not even the appellant or his attorneys, of his act of intimacy with the girl, and that he first told of it when called to the witness stand, although he had been brought from a distant portion of the State to testify.

Goldie Sutherland gave birth to a child on October 26th, 1913; and the physician who attended her testified that the child was "nearly about normal." And, when he was asked to explain what he meant by that expression, he answered that when the child was born it was a little bit blue, which might have been caused either by some strangulation during delivery, or to prematurity in birth; and that the child appeared to be more than a seven months' child.

It will thus be seen there was no denial by the appellant as to his intercourse with the girl; and, that as to the promise of marriage, we have the girl's word against that of the appellant, together with his admission that he stated to her in April that if anything should happen, he would do the right thnig. As to her previous chastity, the jury had her testimony against that of Ira Wiggington.

There being proof upon either side of these issues, their determination rested peculiarly with the jury, they being the best judges as to the credit to be given to the respective witnesses. These two issues, relating to his promise of marriage and the girl's chastity, were really the only material questions in dispute. That the girl was only 18 years of age was not contradicted.

Appellant insists, however, that since the testimony of both witnesses showed the first act of intercourse was had about the middle of March, 1913, and that a fully developed child was born on October 26th, 1913, a little less than eight months thereafter, it could not have been the result of the relation between appellant and Goldie Sutherland; that some other person was its father; and that appellant was not the seducer.

Fixing the period of gestation at 280 days, as stated by Dr. Suter, the child born on October 26th, 1913, would

have been begotten about January 19th, 1913—about two months before the first act of intimacy between May and Goldie Sutherland, according to the testimony of each of them.

Furthermore, the child could not have been the result of the alleged intimacy between Wiggington and the girl, in August, 1912, more than fourteen months previous to the birth of the child.

If the appellant and the prosecuting witness correctly fix the date of their first intimacy at the middle of March, and the child was a fully developed, nine months' child, it would be very persuasive proof that appellant was not guilty of the offense charged against him; but there is some evidence, slight though it be, that the child was not of full development, and it was possible that it might have been an eight months' child. Under this evidence the court properly declined to peremptorily direct an acquittal; and, we do not feel justified in saying the verdict was palpably against the evidence. It was the province of the jury to decide these issues under the contradictory evidence.

In construing Section 281 of the Criminal Code, as amended by the act of 1910, giving this court the right to review the evidence in criminal cases, we used the following language in Wilson v. Commonwealth, 140 Ky., 1:

"The credibility of the witnesses is for the jury, and this court will not disturb a verdict because the jury believed one set of witnesses rather than another. The verdict must be palpably against the evidence, or it can not be disturbed."

In Chaney v. Commonwealth, 149 Ky., 472, a case in which the girl's story seemed much more improbable than in the case now before us, we affirmed the conviction, saying:

"We are not permitted to consider the credibility of the witnesses; for, as said in the Wilson case, *supra*, that is for the jury. We are but reviewers, not triers; and when a jury sends one of its fellow-citizens to the penitentiary upon any credible testimony, the convict must look for relief to those who, under the laws of our land, have the right to grant relief, a province which the court has no right to invade, a function which it has no right to usurp."

See also Black v. Commonwealth, 154 Ky., 144.

Judgment affirmed.