## Gabbard v. Commonwealth.

## Baker v. Commonwealth.

(Decided January 20, 1922.)

## Appeals from Owsley Circuit Court.

1. Conspiracy—Bawdy House—Evidence.—Mere talk among a lot of young men about going to a nearby bawdy house and having a good time with its inmates is no evidence of a conspiracy to do injury to any of them; and the evidence fails to disclose anything from which the inference may be fairly drawn that any of the defendants, other than the one who subsequently did the shooting, had it in mind to do any injury to any one of the inmates.

2. Conspiracy—Evidence.—The law of conspiracy is largely based on the doctrine of agency upon the theory that one who procures another to do an unlawful thing is as guilty as he who actually does it; but under the facts of this case, when one of the defendants shot the girl after taking her away from the custody of her chosen protector, he was not acting in furtherance of the conspiracy or agreement to go to the house and have a good time, but the shooting was solely the act of the one doing it, and it did not grow out of and was not committed in furtherance of any conspiracy or agreement entered into with any of the other defendants.

3. Conspiracy—Act of One Not in Furtherance of Agreement.—Although a lot of young men may agree to go together to a bawdy house for an unlawful purpose they should not all be held criminally responsible for the separate and distinct act of one of them which was not contemplated by any of the others and not in furtherance of their agreement.

4. Conspiracy—Evidence.—Evidence examined and held to be insufficient to show a criminal conspiracy.

5. Conspiracy—Accessories—Evidence.—If there was sufficient evidence of a criminal conspiracy the court should have qualified its instruction on that subject and told the jury in substance that where one of several persons who have conspired to do some other unlawful act, commits a murder, the co-conspirators are not criminally responsible as accessories before the fact unless the murder was committed in furtherance of the conspiracy and was the necessary, natural or probable result of its execution.

6. Conspiracy—Evidence.—Even if the evidence showed the unlawful conspiracy to take the girl from the house for unlawful purposes, where it further shows that after this purpose had been accomplished one of the defendants forcibly took the girl from the custody of the other parties or that she went with him willingly, and that he shot her without any co-operation whatsoever from any other member of the party, and that his act was a separate and distinct act not within the contemplation of the other parties when they entered into the conspiracy, he alone is responsible therefor.

E. E. HOGG and H. C. EVERSOLE for appellants.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing in each case.

At the June, 1920, term of the Owsley circuit court Robert Sandlin, Harlan Baker, Grover Gabbard, Robert Clark, Leonard Baker and Charlie Gabbard were indicted charged with a conspiracy to murder Bessie Allen and that they each did murder her pursuant to and in furtherance of such conspiracy.

The indictment is in five counts. In the first count as recited above the conspiracy is charged and each of the defendants charged with shooting and wounding Bessie Allen from which she died.

The second count charges that Robert Sandlin killed and murdered Bessie Allen by shooting and wounding her, from which she died, and that the other named defendants were at the time present and nearby and coun-

seled, advised and encouraged and assisted Sandlin in so shooting and wounding her.

The third count is the same as the second except that it charges Harlan Baker with the shooting and wounding, and the fourth count is the same as the second except that it charges Grover Gabbard with the shooting and wounding, and the fifth count is the same as the others except that it charges Robert Clark with the shooting and wounding.

The appellants, Harlan Baker and Grover Gabbard, demanded and were granted separate trials and each of them on his separate trial was found guilty and sentenced to imprisonment for life, and each of them has appealed.

The evidence on each trial was in its essential elements the same and the cases have been briefed in this court together, and, by the acquiescence of the attorneys who briefed them, will be heard together in this court and disposed of in one opinion as the same questions are presented on each appeal.

The evidence shows that in the late afternoon of either the 2nd or 3rd of June, 1920, Grover Gabbard, Robert Clark, Leonard Baker and Charlie Gabbard were together at a swimming hole on Buffalo creek in Owsley county and that at least part of them went in swimming; that about the time they had finished their swimming and were dressing Robert Sandlin and three other young men came to the place, Sandlin at the time being drunk and having with him a quantity of whiskey; that a short time after the coming of Sandlin and his party Harlan Baker joined the party and Sandlin freely passed around his whiskey, and most, if not all, the party, participated therein; that the three men who came with Sandlin and joined the party remained only a short time after the coming of Harlan Baker, when they went toward their homes.

Robert Sandlin, Harlan Baker, Grover Gabbard and Robert Clark were each young men between twenty and thirty years of age, while Leonard Baker and Charlie Gabbard were only boys from sixteen to nineteen.

The six remained at or near the swimming hole until shortly after dark engaging in such conversation and conduct as rural young men are wont to under such circumstances except that Sandlin, being much drunker than the others, expressed his determination to have intercourse with some woman. The house of Ann Smith

was only two or three hundred yards distant and had the reputation, as the evidence satisfactorily shows, of being a house of ill fame.

Shortly after dark Harlan Baker and Robert Clark left the others at or near the swimming hole and started off in the direction of the house of Ann Smith, but, so far as the evidence discloses, expressed no purpose of going there; a few minutes later Robert Sandlin, alone, started in the same direction and shortly thereafter Grover Gabbard, Leonard Baker and Charlie Gabbard went in the same direction and they all went to or near the home of Ann Smith, although only two of them, Harlan Baker and Grover Gabbard, entered the house.

The evidence shows not only that Robert Sandlin was a desperate and dangerous man but will, we think, unmistakably disclose, as hereinafter recited, that the other members of the party were not only afraid of him but sought to dodge or get away from him; the evidence further shows that Sandlin unexpectedly came upon the swimming party and that there was no previous arrangement or understanding by which the members of the party were to meet him there or elsewhere, nor does it disclose that prior to the meeting there was any collusion between Sandlin and any other member of the party by which the meeting was to take place.

There were three women at the house of Ann Smith, Ann Smith, Esther Hutchinson, her daughter, and Bessie Allen, her neice, and in addition there was Norman Hutchinson, the husband of Esther, and the infant child of Ann Smith, which was sick.

Ann Smith's testimony is in substance that only two of the men came in the house, Harlan Baker and Grover Gabbard, although she heard others outside of the house, and as will be presently disclosed, went to the door and talked to Sandlin who was just outside the door. She says that Baker was the first one who came into the house and said to Bessie that he wanted to talk a few words to her, but Bessie in substance declined to talk with him and she (Ann) said that Bessie was there for the purpose of helping her with the children; that Baker went outside of the house and came back and sat down on the bed beside Bessie and told her that if she did not go out with them she would be killed and the last one of them killed and that hell would be played there in a few minutes; that she, Ann, then ordered him out of the house when

Baker said that there was a man out there that would not do to "sass," that he would certainly kill anybody that "sassed" him, and about that time someone called on the outside, and she stepped to the door and the man on the outside, who she did not then know but who is shown to have been Sandlin, said what he had to have from Bessie and if she did not go with him that he was going to kill her, burn down the house and play hell and that hell would be played within a few minutes; that she saw Grover Gabbard and called him and asked him to keep them from shooting through the door and told him about the baby being sick, and Grover said he was going up to 'Lish Gabbard's and that he would take her, Bessie, with him and Bessie said she would rather go than to be killed or see some of the others killed; that when she called Grover Gabbard in and told him to try to get the men away and he told her he would go and tell them just the shape she was in and would try to get them away and would try to keep them from shooting in the house; that Grover said he was going away himself and he would get them away if he could, that the girl, Bessie, spoke up and said she would go to 'Lish Gabbard's before she would be killed or see some one else killed and she would go as Grover went, that Grover was going to his father's; that a few days before that 'Lish Gabbard had sent for Bessie to come to his house and help him do some work, and the girl took a notion that she would go and that the girl left there with Grover Gabbard; that was a short time after dark and after the girl left with Grover she did not see her any more until about eleven o'clock when Grover Gabbard, Harlan Baker, Robert Clark and the others, except Sandlin, brought her back shot and wounded; that after the girl was brought back she heard her say that Bob Sandlin had shot her because she would not go into the hills with him, and she said that neither Harlan Baker or Grover bothered her any; that of those who brought her back several of them stayed and waited on her until next morning and the next morning one of them went after her father over in Breathitt county.

As to the occurrences at the house before the girl left with Grover Gabbard, Norman Hutchinson and Esther Hutchinson testified in substance the same as Ann Smith.

The evidence for the defendants is by each of them in substance that Clark and Harlan Baker first went towards the house and that Sandlin shortly thereafter followed them and thereafter Grover Gabbard and the two boys came along; that Harlan Baker went into the house and he specifically denies that he made any threats but says he told Ann Smith, referring to Sandlin, that there was a drunken man out there and an awful bad man, and promised her he would take him off and do the best he could by telling him about the sick child and try to persuade him not to make any disturbance and that he did take Sandlin off down the branch and was not at the house when the girl left there with Grover Gabbard, but that he got separated from Robert Sandlin and went on up the creek towards home, having purposely left Sandlin behind. Grover Gabbard states in substance that he agreed with Ann Smith to try to keep down the trouble there and to satisfy Sandlin, and that the girl agreed to go with him to the home of 'Lish Gabbard and that he agreed to take here there and take care of her and that he left there with her and went up the creek about a half a mile when a hard shower came up and they stopped under a tree and shortly thereafter Robert Clark, Harlan Baker and the two boys came up; that they had been there only a short time until Sandlin also came up and walked up to the girl and handed her a dollar and said "Come, go with me," Sandlin at the time having his pistol in sight and the girl apparently willingly went with him; that it was dark and that he and the others stood there and talked a few minutes and then agreed they would go on home and they started up the creek toward home and when they had gone a hundred or a hundred and tweney-five yards they heard somebody talking and in a very short time thereafter three or more pistol shots were fired and he heard the girl's voice calling to him to come to her that the man was killing her; that he immediately went to where she was only a short distance away, and there found her shot and as he approached he saw Sandlin running off and heard him run through the creek, and had not at the time of the trials been apprehended. As to what occurred after Grover Gabbard and the girl left the Smith house each of the defendants testify in substance the same, and that after the girl was shot they all went and took care of her as best they could and carried her by easy stages back to her home more than a

half mile way, and some of them remained all that night and the next day waiting on and ministering to her. Grover Gabbard further testifies that he was afraid of Robert Sandlin, who was drunk and had his pistol, and for that reason acquiesced in his taking the girl away from him and that this is true is apparent from the whole evidence.

The girl died about two o'clock the next afternoon, but in the meantime she told as many as six or eight people that she was going to die and that Sandlin had shot her because she refused to go into the hills with him, and to as many as three or four of those people she stated that none of the other defendants had done anything whatever to her.

The only evidence in the record that there was any conspiracy or agreement or concerted action between any of the defendants as to getting this girl away from the house of Ann Smith is that of the defendant, Leonard Baker, the sixteen year old boy. He says that Sandlin said something about having a time with some women and spoke of going to the Smith house down there, and some of the others said something about the money it would take and Clark spoke up and said he had the money; that they talked about having a good time with the women and they said Wood, meaning Harlan Baker, could get the girl; that Harlan Baker and Clark first started in that direction and in a short time Sandlin followed them and then he, Grover Gabbard and Charlie Gabbard followed, but he says distinctly and positively that none of them entered into any agreement or understanding to kill or do any harm whatsoever to the girl or anybody else.

So that we have four young men and two boys near a known sporting house discussing the women inmates of it, one of the men very drunk and dangerous and the others apparently attempting to avoid his society; we find two of them starting off in the direction of the house followed by the drunken man, and we find one of the men and the two boys left behind but who subsequently also go in the same direction; we find that the drunken and desperate man goes up to the door of the house and makes serious threats and we find other evidence that another, Harlan Baker, goes into the house and makes threats although from the language of Ann Smith in one part of her testimony it appears that the threats made by Harlan Baker

were merely threats of what he thought or suspected that Sandlin might do; we find that when Grover Gabbard comes near the house he is called therein by the mistress and asked to take the men away and avoid disturbance and trouble; we find that the girl, Bessie Allen, although declining to go with Harlan Baker, agreed to go with Grover Gabbard to the home of 'Lish Gabbard and agreed to leave there and accept Grover Gabbard as her escort and protector; we find that Grover Gabbard left there with her alone, evidently attempting to avoid at least Sandlin, and we find that thereafter Sandlin comes up with him and the rest of the party and with his pistol either in his hand or in sight takes the girl away and leaves them, evidently having not only intimidated the girl but all of the others. or, if the girl was not intimidated she willingly went with him; we find that the other members of the party subsequently accidentally came near to where Sandlin and the girl were and heard them talking and heard the shots which killed her and saw Sandlin fleeing from the place; we find these same five men who are charged with conspiring with Sandlin to kill the girl going to her assistance, ministering to her and carrying her over a half mile back to her home and some of them remaining with her all night waiting on her and until she died the following afternoon.

There is positively no evidence that there was any concert whatever between Sandlin and any other one of the defendants in the shooting of the girl; on the contrary, it is undenied that Sandlin was not a member of the original party which went swimming and that its members did not expect a meeting with him. It is further shown that he was drunk and a very dangerous and desperate man and the circumstances point unerringly to the conclusion that the others were not only afraid of him but sought to avoid him. Other than the threats of Sandlin and the drunken talk of Harlan Baker while at the house, there is no semblance of evidence that any member of the party contemplated any injury to the girl or any inmate of the house; and the fact that Harlan Baker took Sandlin away from the house and separated from him voluntarily before he joined the other members of his party is convincing that he had no purpose to do injury.

The bare talk among a lot of young men about going to a nearby bawdy house and having a good time with its

inmates is no evidence of a conspiracy to do injury to anyone, and we fail to find throughout the record any suggestion, or anything from which the inference may be fairly drawn that any one of these defendants, other than Sandlin, had it in his mind or heart to do any injury to any inmate of that house. The admitted facts positively negative any such suggestion. The law of conspiracy is largely based on the doctrine of agency, it being the theory that one who procures another to do an unlawful thing is as guilty as he who actually does it. Under the facts in this case it cannot be said in any sense that Sandlin when he shot this girl after taking her away from the custody of her chosen protector was acting in furtherance of any conspiracy theretofore entered into, or in any sense, as the agent of any of the other parties. A statement of the facts is sufficient to show that his act in shooting the girl was his own act and did not grow out of and was not committed in furtherance of any conspiracy or agreement entered into with any of the other defendants. The mere discussion of a lot of young men of the inmates of a nearby bawdy house which results in their subsequently going at different times to that house cannot conceivably be distorted into a conspiracy which had for its purpose the injury or killing of any of the inmates thereof, even though one of the party so discussing them, subsequently, without concert or co-operation with any of the others, kills one of them.

It is abhorrent to every conception of justice to say that two or more men, even though they agree to go together to a disreputable place for an unlawful purpose, should all be held criminally responsible for the separate and distinct act of one of them not contemplated by any of the others and not in furtherance of their agreement.

Having these views, we are of the opinion that the trial court should in each case have directed a verdict of not guilty and upon another trial if the evidence be in substance the same this action will be taken.

But even if there had been such evidence of a criminal conspiracy as would have justified a submission to the jury the court should have qualified its instruction on criminal conspiracy as indicated in the case of Powers v. Commonwealth, 110 Ky. 418. In that case it was held that where one of several persons who have conspired to do some other unlawful act, commits a murder, the co-conspirators are not criminally responsible as accessories before the fact unless the murder was committed

in furtherance of the conspiracy and was the necessary or probable result of its execution.

Assuming, in this case, there was a conspiracy between these six persons to do an unlawful thing, that is, to go to the house of Ann Smith and take therefrom the girl, Bessie Allen, for immoral purposes, and assuming, which the evidence does not show, that the other parties were acting in concert with Sandlin to that end, the uncontradicted testimony is that after they had accomplished this unlawful purpose Sandlin took her from the custody of the other parties and she went with him either willingly or through intimidation, and that he then shot her without any co-operation whatsoever from any other member of the party, and that his act was a separate and distinct act not within the contemplation of the other parties when they entered into the conspiracy and he, alone, is responsible for his act. As said in 5 R. C. L. page 1064, title "Conspiracy," "The act must be the ordinary and probable effect of the wrongful acts specifically agreed on, so that the connection between them may be reasonably apparent, and not a fresh and independent project of the mind of one of the confederates outside of or foreign to the common design and growing out of the individual malice of the perpetrator." The authorities cited under that text, among which is the Powers case, abundantly support it.

For the reasons indicated the judgment in each case is reversed with directions to grant each of the appellants a new trial and for further proceedings consistent herewith.