## Wells and Isaacs v. Commonwealth.

(Decided September 29, 1922.)

### Appeal from Estill Circuit Court.

1 Intoxicating Liquors—Criminal Law—Reversal of Conviction—Evidence.—Since the amendment of section 281 of the Criminal Code of Practice on March 23, 1910, this court may reverse convictions in criminal cases where the verdict is so flagrantly against

the evidence as to clearly indicate passion and prejudice on the part of the jury, but in order to do so it must appear from the whole record that the evidence is wholly insufficient to show that the defendant is guilty of the offense charged; and mere preponderance of the evidence in favor of the defendant is not sufficient.

2. Criminal Law—Circumstantial Evidence.—A criminal conviction may be had on circumstantial evidence alone, but in such cases the proven circumstances must be clear and convincing in order to sustain a conviction.

3. Intoxicating Liquors—Evidence.—Evidence examined in this case, as set out in the opinion, and held that it was sufficient to sustain the verdict finding the defendants guilty of operating an illicit or moonshine still with which they were charged.

4. Criminal Law—New Trial.—A new trial in a criminal case can not be obtained after the term of court at which the motion for a new trial was overruled under the provisions of section 344 of the Civil Code of Practice, since such relief is given only in civil cases

RIDDLE & SHUMATE for appellants.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

## OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Upon their trial in the Estill circuit court on an indictment charging them with the illicit manufacture of whiskey by operating a "moonshine" still, the appellants, Sol Wells and Charlie Isaacs, were convicted and each of them punished by a fine and imprisonment in the county jail. Their motion for a new trial was overruled and each of them has appealed.

They relied in their motion upon numerous errors as entitling them to a new trial, among which are: (1), because the verdict was contrary to the evidence and not supported by it, and (2), error of the court in not directing a verdict of acquittal; but their counsel on this appeal, as stated in their brief, rely only on the above two grounds stated in the motion which, as will be seen, are directed only to the sufficiency of the evidence heard upon the trial.

Before considering those grounds it might not be inappropriate to say that the indictment is very defectively and inartificially drawn, but it informally charges the offense for which appellants were tried and its imperfections were waived by the failure to demur to it, or to require the Commonwealth to elect upon which of the several offenses named therein it would prosecute defend-

ants. However, the court in its instructions submitted to the jury only the single offense of unlawfully operating the illicit still. We might furthermore say that at the term of the Estill circuit court following the one at which defendants were tried, a motion was made to set aside the order overruling the motion for a new trial made at the trial term and grant a new trial upon the ground of newly discovered evidence set forth in affidavits accompanying the motion, which practice presumably was taken under the provisions of section 344 of the Civil Code of Practice; but we held in the cases of Wellington v. Commonwealth, 159 Ky. 462, and Greer v. Commonwealth, 165 Ky. 715, that such practice did not apply in criminal cases but was a remedy provided only for new trials in civil cases. Having said this much, we will now proceed to examine the testimony heard upon the trial to ascertain whether the grounds urged on this appeal are sufficient to authorize a reversal of the judgment.

The Commonwealth introduced Isaac Cornett, a justice of the peace in the territory where the illicit still was found, R. B. Lunsford a deputy constable, and Jeff Murphy. They each testified that in the early morning of June 2, 1921, they found an illicit moonshine still in Estill county on Horn's river branch in a hollow; that it was full of mash and that there were three barrels of mash standing by it but no fire or heat around it; that there was a tent on a hill about forty yards from the still, and that two men ran out of the tent and did some shooting at or towards the witnesses, which was returned, but no one was shot. Cornett testified that one of the men who ran from the tent he recognized as being appellant, Sol Wells. The witness, Lunsford, on account of the smoke from the shooting, did not recognize either of the two persons fleeing from the tent at the time, but afterwards, and at the trial, he recognized them as being the appellants, Sol Wells and Charlie Isaacs. The witness, Murphy, did not recognize either of the men because of the smoke from the shots which were fired and intervening brush between him and them. Both the still and the tent, as is manifest from the testimony, were located in a remote as well as more or less dense forest. Each of the defendants testified that they were not there and they proved, not only by themselves but by a number of other witnesses, that they were elsewhere although each of them resided within a mile or two of the place and near

each other. Wells testified that he was visiting some of his relatives at the time in a remote part of the county, and Isaacs testified that he was engaged at the time in painting a house for his sister in Richmond, Ky., and, as stated, each of them substantiate their testimony by other witnesses. It was in proof by two witnesses for defendants that on the day before the illicit still was found, and on June 1, 1921, they were engaged in getting firewood and not far from the place where the still was found they saw two men chopping wood, neither of whom they knew, but one of them stated his name was Taylor, who said they were manufacturing some moonshine whiskey for their personal use, but that testimony was the first as well as the last heard from either of those two individuals.

Under this state of the record it is seriously insisted that there was no evidence authorizing the court to submit to the jury whether appellants operated the still, much less was there sufficient testimony to authorize a conviction. Since the amendment of March 23, 1910, to section 281 of the Criminal Code, we have assumed jurisdiction to reverse the judgment in a criminal case where it was so flagrantly and manifestly against the evidence as to clearly indicate passion and prejudice on the part of the jury. Cloninger v. Commonwealth, 191 Ky. 841; Saylor v. Commonwealth, 158 Ky. 768; Day v. Commonwealth, 173 Ky. 269, and many others both before and since which might be cited. But that rule of practice does not require us to grant a new trial where the testimony for the defendant only preponderates over that of the Commonwealth on the issue of his guilt. The rule only requires that the judgment of conviction be reversed where the evidence "is wholly insufficient to show" that the defendant is guilty of the offense charged (Saylor case, supra), for it is a rule of universal application that the jury are the judges of the credibility of the testimony, and, unless their verdict is so flagrantly against it as to shock the conscience and lead unerringly to the conclusion that it was the result of passion or prejudice, the verdict must stand. Kirk v. Commonwealth, 192 Ky. 460, and cases cited. We, therefore, conclude that the evidence was sufficient to authorize the jury to find that the defendants were the persons occupying the tent on the hill about forty yards from the illicit still when it was found by the Commonwealth's witnesses.

Accepting that fact as true, the next question for determination is, were they the ones who had evidently been operating the still, which must be determined alone from circumstances, since there is no direct testimony upon it. It is competent for a conviction to be had upon circumstantial evidence alone, as this court has held in a number of cases, the more recent ones being the Kirk case, *supra*, and Howard v. Commonwealth, 192 Ky. 687. The fact of the tent and the still being so near together is a strong circumstance that the occupants of the one were the owners and operators of the other, which conclusion is strongly fortified by the fact that such occupants sought flight upon the approach of the Commonwealth's witnesses to the still, and not only so, but they manifested a disposition to protect it as well as themselves by firing upon the witnesses. It is scarcely probable that persons occupying the tent (and it was done, since beds and other articles indicating habitation were found in it), would select such an isolated spot to erect it, and at the same time choose such a favorably convenient access to a moonshine still without having some connection with it. As we have stated, the still evidently had been operated and there is nothing to show that others than the occupants of the tent were, either conveniently located as to it or had access to it. Observation and experience lead almost irresistibly to the conclusion that the occupants of the tent were the operators of the still. As has often been said by this court, the jury are not compelled to accept literally the testimony of a litigant and his witnesses either in a civil or criminal case, since to do so would result in an acquittal in almost, if not all, jury trials in which there was a plea of "not guilty." Many times where a judgment of conviction was affirmed, we have said that we would not return the verdict as a member of the jury, but as members of a court of review our duties are entirely different and which difference is highly proper in order that there may be an end to litigation.

The only issue about which there could possibly be any doubt in this case, according to our minds, is whether the defendants were the occupants of the tent. Upon that issue a greater number of witnesses testified for the defendants than for the Commonwealth. If their testimony and that of their witnesses should be accepted as literally true their respective alibis might be considered as established, but to reconcile the contrariety of the tes-

timony and arrive at the truth was the peculiar function of the jury who saw the witnesses and observed their demeanor upon the stand and we are not prepared to say that their finding in this regard is so flagrantly against the evidence as to authorize a reversal of the judgment, and it is accordingly affirmed.