W. O. SMITH for appellants.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellants were charged by indictment in the Muhlenberg circuit court with the crime of banding and confederating for the purpose of alarming, disturbing, and injuring Jess Cook, his wife and infant children, and that they did disturb, alarm, intimidate, and injure Cook, his family and their property. A jury convicted them and fixed their punishment at three years each in the penitentiary.

The evidence is not as conclusive of guilt as to be entirely satisfactory, but charges such as this are usually provable only by circumstances. Ordinarily no one knows of a conspiracy except the conspirators. Where

parties conspire for an unlawful purpose and set in motion the unlawful agreement, they cannot avoid the consequences of the conduct of any of the conspirators when that conduct is pursuant to the unlawful agreement or understanding, although the act of one of the conspirators may have been committed in the absence of the others. Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476; Daniel v. Commonwealth, 154 Ky. 601, 157 S. W. 1127; Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336; Anderson v. Commonwealth, 144 Ky. 215, 137 S. W. 1063; Napier v. Commonwealth, 110 S. W. 842, 33 Ky. Law Rep. 635.

Cook and family resided in or near Central City, Ky. On the 6th day of August, 1927, the appellants went to his home, according to their testimony, to buy whisky, and, according to his testimony, they came drunk and somewhat disorderly but not to buy whisky. He requested them to leave. They went a short distance away from his house to a spring. They claim he directed them to go there, and that he would bring them a quart of whisky, which he did. He denied that he went to the spring at all. They remained about the spring for some hours drinking whisky. Cook requested a man who stopped by his home to go down to the spring and ask them to leave. When they were ready to leave, they came to Cook's house and attempted to go in over his protest. Words passed between them, but Cook appears to have been unwilling to force them to leave his home. But his wife was of a different temperament. One of them forced his way into the house while the others were about the door. Mrs. Cook seized a mop used to scrub the floors and flailed each of them with the mop until they fled.

On that night shots were fired into the home of Cook about 8 o'clock. Cook returned the fire and then left his home and went out some distance on the hillside, when he saw Fentress and Garrett. He did not see Nails. The 9 year old girl of Cook testified, and, while her testimony is confusing and contradictory, as she appears to confuse the time of the shooting into the house with the dynamiting of it which happened later, as we read her evidence, she testified that at the time of the shooting she saw all three of the appellants run off. It was either at the time of the shooting or at the time of the dynamiting that she saw them from the window of a room where she

and her younger brothers and sisters were playing. We cannot give much weight to her testimony.

About two weeks thereafter Cook heard a noise one night, and, upon going out to investigate, he found Fentress within 6 or 8 feet of his home with a small package in his hand. Upon his asking what he meant by being there, Fentress informed him that he was lost. Fentress lived within a few hundred yards of Cook's home, and his statement that he was lost is entitled to no weight.

Nothing else happened until the latter part of August. About 4:30 in the morning there was an explosion under the house of Cook which tore away the corner of his house and the floor under the bed. He and his wife and baby were sleeping in the bed. He dropped into the hole in an unconscious condition, but he was not seriously injured. He did not see either of the appellants on that occasion. Neighbors came in and examined the premises and testified as to their condition. That a heinous and cowardly crime was committed cannot be doubted. Early in the morning, and within two or three hours after the crime was committed, Cook went into a restaurant and sat down to eat ice cream. The appellant Nails saw him in the restaurant and immediately went in and approached him. He stated to Cook that he understood he was threatening to kill him and was accusing him of having dynamited his house. Cook attempted to deny that he had made any such statement, but Nails struck him over the head with a pistol, seriously wounding him.

The appellants deny that they shot into Cook's house or dynamited it. They make little attempt to show where they were at the time of the occurrences. Nails admits that he struck Cook over the head with his pistol. Within a few days after the commission of the offense, one of the appellants left the state and was arrested in Springfield, Ill., six months later. He gave as his reason for leaving that he had heard that he was charged with the offense, and that he was unable to make bond, and left because he did not want to remain in jail.

We do not know whether the appellants were convicted for shooting into the house or for dynamiting the house, as the instructions are not before us. The indictment charges them with having banded and confederated together to intimidate and injure Cook, his family and property. The acts and conduct of the appellants taken

together were sufficient to authorize the submission of the case to the jury. This disposes of the chief contention of counsel for appellants that the case should be reversed. Counsel for appellants insist that the facts in this case are similar to the facts in the case of Gabbard v. Commonwealth, 193 Ky. 460, 236 S. W. 942. The opinion in that case held that, where two or more men agreed to engage in some unlawful purpose, all could not be held criminally responsible for the separate and distinct act of one of them which was not contemplated by any of the others and not in furtherance of their agreement. That is always the rule. One conspirator is not responsible for the acts of other conspirators except where it is pursuant to the unlawful agreement of the conspirators. The conspiracy in the case before us, if there was one, was to injure Cook, his family and property, and all of the evidence related to the charge in the indictment.

It is suggested in brief of counsel for appellants that the home of Cook was a disreputable resort, a place where moonshine whisky was being sold, and where lewd women met and congregated for unlawful purposes. There is nothing in the evidence upon which such a statement may be founded other than the statement of appellants that they bought a quart of whisky. But, if it was true that the home of Cook was all that appellants' counsel says it was, yet the appellants were not authorized to abate a nuisance by shooting into the home, dynamiting the house, and beating up Cook with a pistol. The courts are open to remedy such conditions, as it is claimed existed at the home of Cook.

It is argued that no motive was shown by the commonwealth, but we cannot agree with this argument. According to the testimony of Cook, he had ordered these three men off of his premises and requested them not to return. Mrs. Cook had used her mop on them, and small things sometimes operate on small minds to arouse the desire of such minds to get even.

Counsel for appellants rely on the case of Allen v. Commonwealth, 176 Ky. 475, 196 S. W. 160, where it was held that the statements of one conspirator, made after the commission of the criminal act of conspiracy, are ordinarily not competent evidence against other conspirators. That is the general rule, although it is subject to some modification, as where the objects of the conspir-

acy are not attained by the criminal act and there remains something yet to be done before the fruits or profits of the criminal act have been consummated. So far as this record shows, there were no fruits of the criminal acts, but this case is distinguished from that case because the evidence about which complaint is made (that is, the striking of Cook with the pistol after the dynamiting of the house) may have been pursuant to a conspiracy still existing to injure Cook, and, if so, it was within the charge of the indictment. Appellants seem to brief the case upon the idea that the indictment charged a conspiracy to dynamite the house, but that is not true. The commonwealth was not asked to confine its evidence to any particular act in furtherance of the conspiracy. If the purpose of the conspiracy was to injure Cook and his family, and that is what is charged in the indictment, the evidence of the striking of Cook by Nails was competent, if there was evidence which established the conspiracy, and we think there was.

It is a close case on the evidence, but questions of fact are for the jury. It should be so. The jury hears the witnesses testify and observes their conduct while on the witness stand. This court is always slow in disturbing the verdict of the jury on the facts. It never does so unless on first impression the mind of the court is startled or shocked by the verdict of the jury. A careful consideration of the record has led us to the conclusion that the evidence was sufficient upon which to base a conviction of appellants for shooting into the house of Cook, leaving out of consideration the dynamiting of the house.

Judgment affirmed.

## King v. Commonwealth.

(Decided April 16, 1929.)