## Cooper v. Commonweath.

(Decided April 25, 1930.)

M. J. HENNESEY for appellant.

J. W. CAMMACK, Attorney General, DOUGLAS C. VEST, M. HARGETT and DONALD WOOD for appellee.

OPINION OF THE COURT BY JUDGE GRIGSBY—Affirming.

The appellant, Thomas Cooper, was indicted in the Mason circuit court for the murder of Newton Gallagher. On the trial of the case, he was found guilty of manslaughter and his punishment fixed at 21 years' imprisonment. He appeals.

It appears from the testimony of witnesses that the decedent, Newton Gallagher, and a number of other men were invited by appellant to attend a "music party" at the home of appellant on February 16, 1929. The record discloses that a quantity of moonshine whisky was provided and that appellant and other members of the party, including decedent, imbibed rather freely. Mr. James Boler gives the following version of what occurred:

"Well, about five hours after I was there, there was an argument started between Mr. Cooper and Mr. Gallagher, and Mr. Cooper accused Gallagher of telling some tales. I think he claimed on his wife,— what they were I don't know,—and he stated to Mr. Gallagher the tales he claimed he told, and says 'Gallagher, didn't you tell those tales?' Gallagher says 'No sir, I didn't,' and Mr. Cooper hauled off and hit Gallagher twice, and Gallagher turned around and hit Cooper and knocked him down and jumped straddle of him. I says 'Boys, there's no sense in that, get up Newt' and he got up, and Cooper says 'you will have to get out of my house' and Gallagher turned around and walked to the front door and stepped out in the yard, and I walked toward the grate and I heard Mr. Cooper say 'where is my gun, I will kill the damn S. B.,' and Mr. Cooper was going towards the front door, with the revolver in his hand

and may not more than hit the ground until the revolver fired once; and I started to the front door and before I got there, the revolver fired again. I looked out the door and Mr. Cooper was standing behind Gallagher with the revolver in his hand. I walked from the front room and into the dining-room, and in the dining-room Cooper took me by the arm and says 'Aint you a friend of mine?' and I said 'I have nothing against you,' and he handed me the gun. Mr. Gallagher fell into the kitchen door, and Cooper walked into the main room and sat on the bed and I helped Gallagher through the dining room into the front room and sat him in a chair and I suppose as much as a quart of blood ran out. I said we ought to have a doctor, to Mrs. Cooper, and she says can't you get him.''

Dr. A. O. Taylor, physician and surgeon at Maysville, who attended the decedent, Gallagher, testified as follows:

''I found him suffering from two pistol shot wounds, one over the left eye and one in his back, in his back to the left side of the backbone.

''Q. Describe the nature of the wound over the left eye? A. Well, that was a wound,— I don't think it entered his skull, I never X-rayed it, but it was very close to the pistol and his eye ball was burned and finally went out, but not immediately after the injury. That is the bullet didn't strike the eye ball, it burned a tunnel through the upper lid through the left eyebrow.

''Q. Did it strike him near the center of the forehead? A. No sir, right along the edge. I never could tell which way it ranged, whether he was shot from behind or in front. I could tell you about the range of the one in the back.

''Q. Was that wound over the eye-brow a dangerous wound? A. No sir.

''Q. Explain to the jury the nature of the wound in the back? A. Well, it must have been directly from back of him, it ranged through and down. I cut it out afterwards, and the point where it lodged in the abdominal wall was lower than the point of entrance in the back.''

Dr. Taylor further testified that the decedent died in March, living a little over a month after he was shot; that the immediate cause of his death was infection from this wound in the abdominal cavity. Dr. M. W. Hyatt also testified as to the two wounds, one being a wound in the left eye and the other one in his back. The defendant himself did not testify. His daughter, Mildred Cooper, 18 years of age, gives a different version of the fight, and testifies that Mr. Moran was using filthy language and was reproved by her father. Her mother came in and asked Gallagher about the tales he had been telling and Gallagher denied it, father told him he did, whereupon Gallagher called father a liar and struck father and they went to fist-fighting and went down together; that the decedent, Mr. Gallagher, was on top of her father, had her father by the hair of the head and his head back and said to Moran "give me that knife." She further testifies that Boler took Gallagher off of her father, and that her mother started to put Gallagher out of the door and told him to go home. Gallagher went out the door. About ten or fifteen minutes after that some one outside hollowed bring me a lamp and her mother rushed up to the mantle to get the lamp. She started to the door and saw Gallagher coming back with his hands in his jacket pockets. Her mother returned and put the lamp on the mantle, and before her mother could return to the door the shots were fired; she did not see the shooting. She further testified that her father and decedent, Gallagher, were both drunk.

It is earnestly insisted by appellant that the trial court should have given an instruction defining the right of appellant to protect his home, himself, and family. In support of that contention, he cites Hoover v. Commonwealth, 192 Ky. 490, 233 S. W. 1042, 1043; Carroll v. Commonwealth, 221 Ky. 557, 299 S. W. 183; Noe v. Commonwealth, 227 Ky. 578, 13 S. W. (2d) 763. In the Hoover case, supra, it was shown that the decedent, after having been ejected from the premises, returned stating, "I am going to come back if I have to fill that house full of steel jackets." Decedent had previously threatened an assault on the wife of appellant. In the Carroll case, supra, defendant informed the would be intruder that she did not desire his entrance, would not let him in, and demanded that he go away and desist from his attempt at forcible entrance. Instead of complying with her

request, decedent threatened to shoot into the house, and then forcibly broke down the door and, as he was stepping into the room, defendants shot him. In the Noe case, supra, the facts, as stated in the opinion, disclose that at the time Noe fired the shot Davis was trying to get into the house at the window, and his associates were throwing rocks and making attacks on the house.

The law is well settled in this commonwealth that one's home is his castle, and he has a right to defend it against wrongful intrusion by others. However, the rule is generally held not to be extended beyond the limitations fixed in the opinions, supra. In the instant case, the decedent was an invitee, and when told to leave the house did so very promptly, and, if the evidence of the witnesses for the commonwealth is to be believed, while he was actually leaving the house decedent was followed by appellant and the fatal shot fired into his back while he was making no resistance at all, nor was he endeavoring to re-enter the house for any purpose. Even the testimony of Mildred Cooper merely states that he was returning towards the house with his hands in his jacket pockets. This testimony is contradicted by the physical fact that he was shot in the back by appellant immediately after appellant had stepped outside of the door. We are of opinion that the appellant, under the facts in this case, was not entitled to the instruction as to his right to protect his home, because there was no evidence on which to base such an instruction.

The next error complained of by appellant is that the court erred in qualifying the self-defense instruction by telling the jury that if they believed from the evidence beyond a reasonable doubt that the said Thomas Cooper, at a time when he was in no danger to himself real or apparent at the hands of Gallagher, began the assault upon Gallagher with a deadly weapon, and thus made the danger to himself real or apparent, then they could not acquit the defendant on the ground of self-defense.

As already stated in this opinion, if the testimony for the commonwealth is to be believed, appellant, after the withdrawal of the decedent from the combat, pursued the decedent and shot him in the back. All of the facts and circumstances proven in the case show that decedent was unarmed, and that appellant did begin the assault with a deadly weapon. In our opinion, the evidence in this case fully justified the instruction given. Bailey v.

Commonwealth, 181 Ky. 468, 205 S. W. 554; Smith v. Commonwealth, 215 Ky. 815, 287 S. W. 8; Hamilton v. Commonwealth, 218 Ky. 521, 291 S. W. 765.

Appellant further complained that the form of instruction was improper even if there was evidence to support it, and cites in support of this contention the case of Meek v. Commonwealth, 227 Ky. 83, 11 S. W. (2d) 996. We have carefully considered the opinion in the Meek case, and compared the instruction given in the instant case with the instruction directed to be given in the Meek case, and in our opinion the instruction given in the instant case qualifying the right of self-defense was proper and fully supported by the evidence.

In our opinion, all of the instructions given in the instant case fairly presented the issue, and the verdict of the jury is supported by the evidence. May v. Commonwealth, 164 Ky. 109, 175 S. W. 17; Wells v. Commonwealth, 195 Ky. 740, 243 S. W. 1015; McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630.

It is therefore ordered that the judgment be affirmed.