## White & Deaton v. Commonwealth.

(Decided March 11, 1932.)

VERNON FAULKNER, C. A. NOBLE and D. G. BOLEYN for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming in part and reversing in part.

The appellants, Allison White and Cecil Deaton, were jointly indicted with Bev Noble by the grand jury of Perry county, Ky., at its September term, 1930, and charged with the crime of storehouse breaking. Noble demanded and was granted a separate trial. Appellants, Allison White and Cecil Deaton, were tried jointly, each found guilty, and each sentenced to one year in the state penitentiary. The trial court, in pronouncing judgment, upon finding that Cecil Deaton was "under the age of 21 years of age at the time of committing this offense and that this was his first offense," ordered that Deaton be confined in the house of reform at Greendale, Ky., for the period of one year.

Appellants' motion and grounds for a new trial being overruled, they prosecute, in one brief, this appeal, seeking a reversal of the judgments entered upon these verdicts found against them.

The motion and grounds for a new trial assigned seven grounds complaining of errors committed upon their trial, but, in their brief, counsel sets out and argues only two grounds upon which the appellants contend the judgments rendered in this case upon the verdicts against them should be reversed and a new trial awarded.

We will confine our discussion to these two grounds thus presented and contended for by them. Any others not advanced in their brief will be now considered by us as having been waived.

Appellants complain, first, that as to each of them, "the verdict of the jury is palpably against the evidence and that it was not the result of deliberation, but of passion and prejudice," and, second, as to the appellant Cecil Deaton, counsel urges the further objection in his behalf that Deaton was tried in Perry circuit court without having been first brought before the county court and by that court his case ordered transferred for trial to the circuit court, as provided in section 331e-5, Kentucky Statutes.

We will now attempt to consider and dispose of these objections in reverse order to that in which presented.

We will, therefore, first consider the complaint urged in brief as objection 2; that the circuit court proceeded with the trial against the appellant Cecil Deaton,

without having jurisdiction of him, for the reason and because, it is alleged, that Deaton was under the age of 17 at the time of his alleged commission of the offense for which here tried, and that his trial was had in the circuit court and verdict therein returned by the jury against him without any hearing or trial of the charge first had thereof in the Perry county court, when acting as judge, of the juvenile court, and its jurisdiction thereby acquired, having been surrendered and by proper order transferred by the Perry county court to the circuit court for trial upon the charge, as provided by sections 331e-1 to 331e-5 of the Statutes.

It appears by the record that the matter of the defendant Deaton's being under 17 years of age at the time he is charged with having committed this offense was not brought to the attention of the court, nor objection made to its jurisdiction to try the defendant; that the defendant had never been before the Perry county court, acting as a juvenile court, wherein his charged commission of this offense was considered, and the defendant found to have been under 17 years of age at such time, and the county court's jurisdiction of the defendant thus acquired was never by any proper order of said court surrendered or transferred to the circuit court for trial of the offense, as by section 331e-5 of the Statutes required, but trial of the defendant in the circuit court was suffered to proceed until after verdict had been returned against him, without objection being made to the jurisdiction of the court, or proof heard upon such objection for the ascertainment of the defendant Deaton's age at the time of the commission of the offense until after verlict was returned, when defendant set out such claim in his motion and grounds for a new trial. The only evidence had or proof heard in support of defendant's contention, so presented to the court, was the affidavit of defendant's father, James Deaton, filed with and in support of his motion, wherein the affiant averred that

"The defendant, Cecil Deaton, was born on the 31st day of August, 1913 and that he was 17 years of age on the 31st day of August, 1930 and that on the 5th day of August, 1930, and at the time the storehouse of Sam Moore was alleged to have been broken into, he was not 17 years of age and that on the day the said store was broken into, he was

arrested and arraigned before Shiloh Salli, justice of the peace of Perry county, Kentucky, and was never and has never been arraigned by the county judge of Perry county on the said charge, or before any other judge of like or similar jurisdiction in Perry county, Kentucky."

It appears from the record herein that the trial court, upon the evidence of this affidavit of James Deaton, which was the only evidence heard by it in support of defendant's motion for a new trial, overruled the motion and pronounced judgment upon the jury's verdict, which fixed the defendant Deaton's punishment at confinement in the state penitentiary for a period of one year, by adjudging that "it appearing to the satisfaction of the court that the defendant is under 21 years of age and that he was born on the 31st day of August, 1913, and that it was his first offense, that the defendant, Cecil Deaton be confined in the House of Reform at Greendale, Kentucky, until he is 21 years of age," or, as elsewhere appears in the record, did adjudge that the defendant be therein confined for the period of one year.

Two questions are thus presented in this objection, the first being whether the date of the commission of the offense, or the date of the trial of defendant, shall control and determine whether the defendant is within the terms of section 331e-5 of the present Statutes, as being then 17 years of age, or under, it appearing that the defendant Deaton had not passed his seventeenth birthday when he is charged with having committed the offense on August 5, 1930, but became 17 on August 31, 1930, and had thus passed his seventeenth birthday at the time of his trial on December 3, 1930. Each of these questions has frequently been decided by the court, it having, in the late case of Goodfriend v. Commonwealth, 216 Ky. 573, 288 S. W. 330, said: "Under Ky. Stats., secs. 331e-1, 331e-23, in fixing jurisdiction of juvenile court of criminal offenses, offender's age at time of offense controls," and also that, "exclusive original jurisdiction of all male offenders 17 years of age and under is vested in the juvenile court, and unless and until that court orders a transfer of the case, such offenders cannot be prosecuted for a criminal offense." Commonwealth v. Franks, 164 Ky. 239, 175 S. W. 349; Talbott v. Commonwealth, 166 Ky. 659, 179 S. W. 621; Waters v. Commonwealth,

171 Ky. 457, 188 S. W. 490; Wilson v. Commonwealth, 208 Ky. 707, 271 S. W. 1055. And further declared in its opinion that this question of jurisdiction may be raised for the first time in the appellate court, as was in the earlier case of Talbott v. Commonwealth, 166 Ky. 659, 179 S. W. 621, 622, forcibly and clearly stated by Judge Carroll as follows:

"We therefore conclude that the circuit court had no jurisdiction to hear or determine this case, and, having no jurisdiction, it was not necessary that the defendant should have made the ordinary objections to the jurisdiction of the court to save his right to raise the question here. · The statute deprived the court of jurisdiction, and this want of statutory jurisdiction may be relied on in cases like this as a ground for reversal, although not raised in the circuit court. The circuit court has jurisdiction only to indict and try juvenile offenders when they have been transferred to that court by the county court in the manner authorized by the statute. This does not, of course, mean that, when the circuit court takes jurisdiction to hear and determine a case against a juvenile offender, and it develops for the first time during the trial that the defendant is within the statutory age, he cannot, upon his dismissal in the circuit court, be immediately apprehended and taken before the county court; nor does it mean that on the return of this case the defendant should not be, upon his discharge by the circuit court, at once arrested, and taken before the county court; nor will the proceedings had in this case in the circuit court be a bar to other like proceedings in that court in the event the defendant is transferred by the county court to the circuit court."

In accord with the principle and rule of these holdings, this court in the case of Cody v. Commonwealth, 210 Ky. 849, 276 S. W. 970, 971, upon a like question therein presented, said:

"The court should have sustained the motion of appellant to dismiss this indictment, and then referred the case to the county court for action. As he failed so to do, the case must be reversed." Baughman v. Commonwealth, 206 Ky. 441, 267 S. W. 231; Alexander's Adm'r v. Kentucky Bankers Associa-

tion, 237 Ky. 232, 35 S. W. (2d) 287; Ashley v. Commonwealth, 236 Ky. 543, 33 S. W. (2d) 614.

From our consideration of the law thus uniformly declared by this court applicable to the case at bar and as announced in these cases, we are constrained to conclude and are of the opinion that the court erred in overruling the defendant's motion for a new trial, made after verdict returned against defendant in the circuit court herein, upon the showing then made to the court by the affidavit supporting the motion that the defendant was under 17 years of age, at the time his commission of this offense was charged, and, further, thereby found that the trial court had never acquired jurisdiction of the defendant by any order of surrender or transfer of the county or juvenile court's original jurisdiction thereof to it, nor that the defendant was ever therein arraigned for this offense charged against him. For this error of the trial court in pronouncing judgment upon the jury's verdict sentencing defendant to a year's confinement in the House of Reform, the judgment is reversed, and, upon the return of the case to the circuit court, the indictment of the defendant Deaton for this offense will be dismissed and the defendant discharged, whereupon he will be apprehended and taken before the county court, and upon notice given and appropriate preliminary proceedings had, defendant's age at the time of the alleged commission of this offense will be determined, and, if found to have been under the age of 17, the court may in its discretion, by proper orders, duly surrender and transfer to the circuit court its jurisdiction thus acquired, as provided by section 331e-5 of the Kentucky Statutes, of the defendant to try him for the commission of this offense as charged.

For the proper consideration of the further assignment of error and complaint made by counsel for defendants Cecil Deaton and Allison White, that the jury's verdict found against defendants is against the evidence and is not the result of deliberation, but of passion and prejudice on the part of the jury, the judgment against the defendant Deaton having now been reversed upon other grounds, it will be unnecessary to consider the same in so far as such objection relates to Deaton, nor should the trial and judgment had herein as to Deaton be considered or suffered to prejudice him in any later trial, if had of him upon this offense charged, but this

second ground of objection, urged by appellant, will now be considered only as if made and as bearing upon the appeal of the one defendant, Allison White.

A brief resume of the conflicting evidence given herein by the testimony of witnesses for the commonwealth and defendants is as follows: The commonwealth offered in evidence the testimony of six witnesses in support of its charge that the defendants, Cecil Deaton and Allison White, had committed the offense of feloniously breaking into the storehouse of Sam Moore in Chavies, Perry county, Ky., on the night of August 5, 1930, and taking therefrom his cash register and its money contents.

Sam Moore testified that defendants, together with Ben White, Burnie Deaton, and others of their crowd, were hanging around his store building on the afternoon next before the night of August 5, when it was broken into, and that, while there, Ned White was found hanging around the corner of the store by the front window, through which the store was entered, from which the inference was left to be drawn that White then unfastened the lock of the window, that it might the more easily be raised and later entered by the defendants.

Woodrow Davidson and Burnie Deaton each testified that they were near the store on the night of August 5 and saw the defendant Cecil Deaton raise the window of the store and enter it and bring back the cash register, which he handed to one Bev Noble, who carried it, along with the defendants across the street to the depot; that they also saw defendant Allison White standing watch by a telephone pole, nearby the store, who joined Noble and Deaton in carrying the register over to the depot, where it was demolished and looted of its contents and then placed in a rain barrel.

The defendants, Cecil Deaton and Allison White, attempt to establish an alibi as their defense to this charge, and, in support of the alibi, testified that Allison White, about 5 o'clock of August 5, returned to the home of his father, George White, at Chavies, sick, and immediately went to bed, where he remained all night and until 10 o'clock the next morning, not leaving the house with but two exceptions, once when he went to the depot and was gone about five minutes and at one other time, as to which he does not further explain. Defendant Cecil Deaton says that he also went to the home of

George White about 7 o'clock on the evening of August 5, and was invited by George White to spend the night with his son, Allison White, which he did.

The defendants are supported in this testimony by George White, the father of Allison, and his mother, Mary White, Greenberry Gay, and some four other witnesses, all of whom state that White and Deaton remained together all night in George White's home, which is made in the rear rooms of the store building, the front door of which offers the only means of ingress and egress therefrom, and that all the windows of the building are screened with strong wire and the front door was locked and the key thereto kept by George White, by which it is made to appear that the defendants could not have left the building during the night without the knowledge of George White, even had they so wished.

The other witnesses testified that the defendants were found, upon their calling at the White store during the evening of August 5, to be at the George White home and to have at such time retired for the night, as was also stated by the witness, Greenbury Gay, who testifies that he also spent the night there with the defendants.

The commonwealth meets this attempted proof of alibi by the defendants by the evidence of the witnesses Woodrow Davidson, Burnie Deaton, Sol Napier, and Lena Eversole, the first three of whom testified that they both saw and were with the defendants about the streets, poolroom, and depot of Chavies during the evening and night of August 5, who were at such places, "hanging around" with them, and others of their crowd, until the defendants left those places and started towards the Sam Moore storehouse, shortly before it was broken into. Lena Eversole states that she saw and recognized the defendant Allison White around the depot on the morning following the storehouse breaking, about 7 o'clock, or some three hours earlier than he states he arose that day and left his father's house.

From this brief resume of the evidence, it is shown that it was very conflicting, with one group of witnesses positively testifying that they saw and were with the defendants on the streets of Chavies on the night of August 5 when some of them saw the defendants even while engaged in breaking into the storehouse of Sam Moore, while others of this group testified that they saw the defendants upon the streets of the town at times cov-

ered by the defendants claimed alibi and their witnesses that they were at all such times absent from such places and asleep at the home of George White.

The Criminal Code of Practice, sec. 271, subsection 5, provides:

> "The court in which a trial is had upon an issue of fact may grant a new trial, if a verdict be rendered against the defendant by which his substantial rights have been prejudiced, upon his motion . . . if the verdict be against law or evidence."

However, this court has uniformly held that it will not disturb a verdict in a criminal case, unless the same is palpably against the evidence (May v. Commonwealth, 164 Ky. 109, 175 S. W. 17; Wells v. Commonwealth, 195 Ky. 740, 243 S. W. 1015), and by way of expressing its adherence to this rule and practice; the court said in the case of Burden v. Commonwealth, 216 Ky. 787, 288 S. W. 742, 743:

> "We have constantly and repeatedly announced the rule to be that a judgment of conviction in a criminal prosecution could not be said to be so flagrantly against the evidence as to authorize the court to set it aside for that reason, unless at first blush it appeared to be the result of passion or prejudice on the part of the jury, or to have been founded upon no evidence of convincing or convicting force. Our opinions are without dissent on that proposition, two of the latest of which are Winchester v. Commonwealth, 210 Ky. 685, 276 S. W. 575, and Deaton v. Commonwealth, 211 Ky. 651, 277 S. W. 1001. Following that rule, it clearly appears that we are without authority to reverse the judgment upon that ground, although we might be of the opinion that, had we been on the jury, we would not have returned so severe a verdict."

And, again, in Nails v. Commonwealth, 228 Ky. 838, 16 S. W. (2d) 474, 476, the court said, to the same effect: "It is a close case on the evidence, but questions of fact are for the jury. It should be so. The jury hears the witnesses testify and observes their conduct while on the witness stand. This court is always slow in disturbing the verdict of the jury on the facts. It never does so unless on first impression the mind of the court is

startled or shocked by the verdict of the jury." Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629; Picklesimer v. Commonwealth, 224 Ky. 381, 6 S. W. (2d) 457.

Recognizing the rule and principle as announced in these cases, as applicable to the complaint made herein by appellants, that the judgment should be reversed for want of sufficient evidence supporting the verdict, we are of the opinion that the complaint is without merit and cannot be sustained. It therefore follows that, for the reasons hereinabove indicated, the judgment of the trial court will have to be and is reversed as to the defendant Cecil Deaton and affirmed as to Allison White.